### BENJAMIN LIGHT *vs.* JACOB JACOBS & others.

Suffolk.    March 11, 1903. — April 1, 1903.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Equity Jurisdiction,* Fraud.   *Conspiracy,* Civil action.   *Joint Tort-feasors.*

In a suit in equity to rescind a contract on the ground that the plaintiff was induced to part with certain goods by false and fraudulent representations of the defendant, in order for the plaintiff to prevail, it is not necessary that the false representations should have been the sole or the predominant inducement, if they had a material influence upon the plaintiff's action although combined with other motives.

In a suit in equity to set aside a contract, under which it was alleged that the plaintiff had been induced to part with certain goods on the security of a certain second mortgage of real estate by the false and fraudulent representations and acts of the defendants conspiring together, it appeared, that a false statement that $1,000 had been paid was indorsed on the mortgage note, that the plaintiff did not see this indorsement until after he had shipped the goods, but that one of the defendants had told the plaintiff that the payment had been made, and that the other defendants had taken part in having the false indorsement of payment made on the note. *Held,* that the last named defendants were not relieved from liability because the plaintiff was deceived by the narration of their false representation and not by seeing the indorsement.

If several persons fraudulently conspire to procure money by means of an overvalued second mortgage which they have caused to be made for the purpose, and intrust this mortgage to one of their number to work the fraud, they are none the less liable to one who parts with goods on the security of the mortgage, because they did not know what person was to be deceived or the precise manner in which it was to be done.

The facts stated by the court were held to be sufficient to warrant a finding by a master, that the plaintiff in this case was induced to part with certain goods by fraudulent representations and acts in which all of the defendants took part.

In a suit in equity seeking personal judgments against several defendants for the proceeds of goods with which the plaintiff was induced to part by the fraud of the defendants conspiring together, those defendants who have not received their agreed portion of the proceeds are none the less liable to the plaintiff.

BILL IN EQUITY, filed August 29, 1902, to rescind a contract between the plaintiff and the defendant Jacobs, alleged to have

been induced by fraudulent representations and acts of the defendants conspiring together, whereby they obtained from the plaintiff, a wholesale dealer in clothing in New York, goods of the value of $6,606.50, the defendant Jacobs giving as security a second mortgage on certain real estate in Boston, praying that the defendants Kaufman, Bilosky and Jacobovitz should be ordered to deliver to the plaintiff such of the goods as remained in their hands, and that the plaintiff be given a judgment for the value of such of the goods as they had sold, and that the mortgage and note held by the plaintiff should be ordered to stand as security for the payment of the judgment.

The Superior Court made a final decree, that the plaintiff was entitled to rescind the contract with Jacobs, and was entitled to the merchandise delivered by the plaintiff under the contract, giving judgment personally against all the defendants in the sum of $1,382.20, and ordering that the mortgage and note, after being deposited by the plaintiff in rescission of the contract, be returned to him to be held as security for the payment of the judgment.

The defendants Kaufman, Biloski and Jacobovitz appealed from the final decree. The defendant Jacobs appealed from an order confirming a master's report and the denial of a motion made by him to dismiss the master's report.

*F. N. Nay & W. Keyes,* for the defendants Kaufman, Biloski and Jacobovitz.

No counsel appeared for the defendant Jacobs.

*A. K. Cohen,* for the plaintiff.

LATHROP, J. No counsel appeared for Jacobs at the argument before us, and the other three defendants, hereinafter called the defendants, contend that however guilty of fraud Jacobs may have been, they are innocent, and the decree against them should be reversed. We are unable to reach this conclusion. The fraud began by Kaufman, one of them, purchasing a parcel of land, taking the title in the name of a man of straw, who gave a mortgage upon it for nearly its full value, and a second mortgage for $10,500, whereas the value of the land over the first mortgage did not exceed $1,000. There was no consideration for the second mortgage. Soon after the date of the conveyance the other two defendants became interested

with the defendant who originated the fraudulent scheme, by agreeing to pay him each one third of a small sum expended by him. It is clear that the object of the defendants was to sell or trade the second mortgage. To aid them in this purpose, they had the one who appeared as mortgagee indorse upon the mortgage note a payment of $1,000 and interest, when no money was paid, and endeavored to sell the mortgage to Jacobs for $1,000. An oral agreement was made to sell it for this price, and the mortgage was assigned to Jacobs, and the note indorsed in blank. This arrangement fell through, because Jacobs could not raise $1,000. Later, Jacobs represented that he had a chance to trade the mortgage in New York. The defendants let him have the mortgage, note and assignment, with the agreement that if he did not dispose of the mortgage and bring back $1,000 to pay them he should forfeit his interest in another real estate deal he had with them. The defendants did not know with whom Jacobs was going to deal in New York, and gave him no instructions or authority to act for them in New York.

Jacobs went to New York and represented to the plaintiff that he had a mortgage of $10,500, on which $1,000 had been paid; that he had obtained this mortgage in a real estate deal with Kaufman; that the property had been sold in December, 1901, for $41,000, and paid for by a first mortgage of $20,000, a second mortgage of $10,500, and cash for the balance; and that he owned real estate in Boston. These statements were found by the master to be false, and known by Jacobs to be false; that they were believed by the plaintiff to be true; and that in reliance upon them, the plaintiff agreed to sell clothing to Jacobs, subject to an examination of the title, which Jacobs agreed to pay for. The Massachusetts Title Insurance Company examined the title to the property at the request and at the expense of Jacobs. While the title was being examined, the plaintiff wrote to the Massachusetts Title Insurance Company for the assessed value of the land and to have it appraised. This was done, and the plaintiff was informed that the property was assessed for $31,900, and that an expert had estimated the property to be worth $34,000.

The plaintiff thereupon shipped the goods to Boston, to the value of $5,675.25. The master has found that the plaintiff

shipped the goods from New York in the belief, induced by the statements and conduct of Jacobs, that he, Jacobs, was then the holder and owner of the second mortgage and note, and that he was also the owner of some substantial amount of real estate in Boston, in addition to this mortgage, and that the mortgage was good security for the clothing; that the statements made by the Massachusetts Title Insurance Company as to the assessed valuation, and the market value of the property covered by the second mortgage were considered by the plaintiff in connection with the representations made to him by Jacobs, but that he would not have entered into any agreement to sell goods to Jacobs, and would not have shipped goods to him but for false representations made by Jacobs to him, and the reliance placed on these false representations.

When Jacobs came back to Boston, he had not paid the defendants for the second mortgage, and was not the owner of it. He then made an agreement with the defendants, by which they waived the payment of $1,000 in cash, and agreed to accept a bill of sale of the clothing as security for the sum of $1,000, and also as security for the sum of $750, of which $500 was to be advanced by the defendants in payment of interest due on the first mortgage to May 25, and the balance, $250, was to be advanced by the defendants for examination of the title, and charges upon the goods. Jacobs then executed a bill of sale to the defendants of "all the goods contained in the bill of lading and schedule hereto annexed." The schedule contained the business name and address in New York of the plaintiff.

The defendants contend that they did not know from whom Jacobs obtained the goods in New York, when they agreed to accept the bill of sale, but the master has found that they knew on June 12, the date the bill of sale was signed, if not earlier, that the clothing was obtained by Jacobs from the plaintiff. He has also found that while the defendants did not have actual knowledge of the representations made by Jacobs to the plaintiff, they knew, when they took the bill of sale from him, that he had obtained the goods from the plaintiff to the value of $5,675.25 by using the second mortgage in some manner; that Jacobs, when he dealt with the plaintiff, did not own the second mortgage; that he was a man almost destitute of means; that

the second mortgage was totally inadequate in value, whether transferred in exchange for, or as security for, clothing to the value of $5,675.25. On all the evidence the master found that the defendants conspired with Jacobs in Boston to enable Jacobs to obtain possession of the goods from the plaintiff through the Massachusetts Title Insurance Company, and to obtain a lien for themselves upon the same goods to secure payment by Jacobs to them of $1,000, the price of the second mortgage, and the sum of $750 additional, which had to be expended to put through the transaction. As to the $500, the interest on the first mortgage, the master found specially that the reason the defendants paid this interest was to keep the first mortgagee quiet ; and thus put off the time when the real facts in regard to the property would be likely to be brought to the knowledge of the plaintiff, as holder of the second mortgage.

There are other findings of the master which we shall have occasion to refer to in considering the argument of the defendants, and others which relate to details, on which the decree was founded, and which need not be stated.

1. The defendants contend that the fact that the plaintiff made a separate and distinct investigation into the value of the property covered by the second mortgage prevents him from recovering. The case of *Poland* v. *Brownell*, 131 Mass. 138, cited by the defendants, does not cover this point. It relates merely to sellers' talk. The rule is that it is not necessary that the false representations should have been the sole or even the predominant motive ; it is enough if they had material influence upon the person deceived, although combined with other motives. *Matthews* v. *Bliss*, 22 Pick. 48. *Safford* v. *Grout*, 120 Mass. 20, 25. *Windram* v. *French*, 151 Mass. 547. *Burns* v. *Dockray*, 156 Mass. 135, 138.

2. It is next contended that however guilty Jacobs may be the defendants are innocent ; and it is said that the master has found that Jacobs was acting adversely to them, and that the plaintiff did not see the indorsement that $1,000 had been paid until after he had shipped the goods. The master's finding is that in respect to the endeavor of Jacobs to buy the mortgage of the defendants he was dealing adversely to them, but that on the completion of the sale from the plaintiff to Jacobs all four

defendants conspired and worked together, first to enable Jacobs to obtain the possession of the goods, and next to enable the other three defendants to secure a lien upon the goods. While it is true that the master found that the plaintiff did not see the indorsement of $1,000 on the note until after he had shipped the goods, he also found that Jacobs told the plaintiff when in New York that this payment had been made ; and he told the same thing to the Massachusetts Title Insurance Company.

3. We are of opinion that the inferences of fact drawn by the master are well warranted by the facts in the case. Indeed we have no doubt that stronger inferences might have been drawn by him. The transaction was a fraud from its inception. Kaufman bought the land and had the deed made to a man of straw. The purchase price was obtained by the proceeds of a first mortgage, given by this same man of straw, who also gave a second mortgage to Kaufman, without consideration, for $10,500. Then Kaufman took Biloski and Jacobovitz in with him. The value they put on the second mortgage was $1,000, for they were willing to sell it to Jacobs for that amount. Thinking that the mortgage seemed too large, they indorsed a payment of $1,000 upon it, when nothing had been paid. To enable Jacobs to dispose of the mortgage, they had an assignment of it made to him. While they did not know the precise scheme he intended to work, they knew that in some way he intended to get rid of the mortgage. They intrusted him with the means of deceiving, and cannot complain if he used those means. See *Windram* v. *French*, 151 Mass. 547, 550, and cases cited ; *Nash* v. *Minnesota Title Ins. & Trust Co.* 159 Mass. 437, 442. When Jacobs returned with the result of his fraud, the defendants did not repudiate him, but worked with him to dispose of the goods, and obtain the money for which they had been scheming.

4. We see no objection to the form of the decree.* If the

---

\* It was contended, that the plaintiff should not be allowed any relief as against Biloski, Kaufman and Jacobovitz, except on tender to them of $1,750 due them from Jacobs under their agreement with him, or, if they were given back the mortgage, on tender of the difference between $1,000, its value, and $1,750, the amount owed them by Jacobs, and that in no event should any personal judgments or executions be granted as against Biloski, Kaufman or Jacobovitz, they having received nothing from the sale of the missing goods, except a small amount received by Jacobovitz for actual services in the store at Lowell.

defendants have been injured by the acts of Jacobs, that is no reason why the plaintiff, in enforcing his rights, should pay the sum which Jacobs agreed to pay the defendants by the contract which he made with them after the goods arrived.

*Decree affirmed.*