NEW ENGLAND FOUNDATION COMPANY *vs*. WILLIAM W. REED & others.

Norfolk.    January 17, 18, 1911. — September 6, 1911.

Present: KNOWLTON, C. J., MORTON, BRALEY, & RUGG, JJ.

*Equity Jurisdiction,* To relieve from results of fraud.  *Deceit.   Conspiracy.   Equity Pleading and Practice,* Master.

A bill in equity against a builder and certain trustees alleged in substance that the defendants had conspired and jointly by false representations and fraud had induced the plaintiff to enter into a contract to furnish work and materials for the construction of a building on land represented to belong to the builder and to carry out such contract, that the land did not then belong to the builder but later was acquired by him subject to a construction mortgage to the defendant trustees of such a nature as, under circumstances stated in the bill, to make it practically impossible for the plaintiff to enforce his contract.  The prayer of the bill was that the mortgage be declared void, that the land be sold and that the plaintiff be satisfied from the proceeds.  A master to whom the suit was referred found in substance that the builder had negotiated with the owner for the purchase of the land with a view to building a block of houses thereon, and, before the terms of purchase were concluded, had induced the plaintiff by false representations to begin work on the lot, a written contract as to the work having been made between the plaintiff and the defendant builder.  The plaintiff had no direct dealings with the defendant trustees and made no inquiries of them and received no information from them directly or indirectly.  More than fifteen days after the making of the contract with the plaintiff the builder through deceit practised upon the owner, in which the managing trustee participated, procured a conveyance of the land to him and at the same time executed to the trustees a construction mortgage of such a nature as to make it "not only possible but probable at the outset" that the builder would be unable to proceed and that the plaintiff would be unable to enforce performance of his contract.  The managing trustee maintained the relation of mortgagee to the enterprise and had no other active interest regarding it.  All joint action between the builder and the other defendants ended with the execution of the mortgage.  The managing trustee did not intend the builder to fail and did not have the equivalent of actual knowledge of his operations.  The builder did fail and the plaintiff suffered a loss.  *Held,* that on such facts the trustees were not liable for the misrepresentations of the builder and that the suit could not be maintained for the purposes for which it was brought.

Where in a suit in equity it is sought to fix upon several defendants liability for damages resulting from deceit and fraud actively practised upon the plaintiff by one only of the defendants on the ground that all of the defendants conspired in the deceit and fraud, passive observation of the conduct or readiness to profit by a failure in duty of the actively fraudulent defendant is not enough to make his co-defendants liable in the absence of some relation on their part of agent, copartner or confederate toward him.

It is the sole duty of a master, to whom a suit in equity has been referred under the ordinary rule, to find and report the facts, and he is not required to make general rulings of law as to the effect of such findings.

Where a master, to whom a suit in equity was referred, in his report finds facts from which it appears that the suit cannot be maintained, the suit will be dismissed although the report also contains rulings by the master to the effect that upon the facts reported the suit should be maintained.

BILL IN EQUITY, filed in the Superior Court on April 26, 1909, averring in substance that the defendants, William W. Reed, George H. Reed, and Harrison W. Conner, individually, and William W. Reed, George G. Stone, George L. Gilmore, as trustees of the Lexington Club, acted in concert in inducing the plaintiff by deceit and fraud to enter into a contract with the defendant Conner to furnish certain materials and labor for the construction of apartment houses upon land abutting on Longwood Avenue in Brookline, the defendant trustees taking a construction mortgage upon the premises of such a nature as to prevent the plaintiff from being paid. The prayers of the bill in substance were that the mortgage be cancelled, the land be sold and the plaintiff be paid its claim for the proceeds.

An interlocutory decree was made that the case be "referred to Wade Keyes, Esquire, as master." The decree contained no specific directions to the master. The substance of material facts found by him is stated in the opinion. Among other findings and rulings were the following:

" The crucial legal proposition in this case appears to the master to be simply whether the deceit practised on Stearns by Conner and W. W. Reed makes W. W. Reed and the Lexington Club legally responsible for the consequent loss to other persons who fall naturally and innocently into the mesh and suffer as did this plaintiff. . . .

" On the part of the defendants W. W. Reed and Conner, it is urged in argument that if there was any fraud in the acquisition of the land from Stearns he alone might complain, and he having complained in Court and been appeased by one of these defendants they are not now together liable to any person who dealt with Conner alone with reference to the erection of buildings on the land in question. I do not so find. On the contrary, I do find that the plaintiff has actually suffered damage by reason of its dealings with Conner on account of its unrequited labor upon

the land, which entire damage it would not and could not have suffered when and where it did suffer if the fraudulent device for the acquisition of the land had not been put in successful execution against Stearns. The work done on the land by the plaintiff was primary work fundamentally necessary for the erection of buildings thereon, which work and consequent erection at somebody's labor and expense other than at Conner's expense was a necessary part of the building operations and known to W. W. Reed on January 4. The work of the plaintiff was actually in progress when the title to the land was acquired from Stearns. This fact was known to W. W. Reed as well as to Conner, but notwithstanding they concocted a financial arrangement at the time which was designed not only to trick Stearns, but of necessity to disregard the welfare and jeopardize the rights of this plaintiff and such other credulous persons as Conner might induce thereafter to contribute labor and materials to the enterprise on the financial credit of Conner.

"As a matter of fact W. W. Reed thought the loan safe to make from his standpoint and thought Conner, as mortgagor, so likely a man to be profitable to himself, as mortgagee, that he, Reed, was inclined and did actively assist Conner to become a landowner in order that Conner might become a mortgagor with himself, Reed, trustee of the Lexington Club, as first mortgagee. When this point was reached the joint action of the two, so far as the active interest of Reed was concerned, ended, but I am constrained to report that Reed under the circumstances could not thus embark with Conner upon such an enterprise in such a way and withdraw from beneath the burdens of it at his pleasure while retaining the privilege and capacity as mortgagee of realizing on the construction mortgage whatever future benefits might thereafter legally accrue to the holder of it.

" The financial relations between W. W. Reed and Conner were so framed up between them that when title to the land passed to Conner on January 4, it was morally certain from their standpoint that each had nothing to lose and each had a likelihood of gain. From the foregoing facts I report it to have been their expectation that if Conner succeeded in completing his buildings and obtaining his permanent mortgage loans the construction mortgagee would be fully repaid with interest and Reed would

profit personally by way of commissions, services and other incidental methods peculiar to his craft.   While on the other hand, if Conner did not succeed then the construction mortgage would be foreclosed and its holder could on foreclosure sale receive from another purchaser its due or purchase itself and gather in as an unearned increment added to the premises the value of such labor and material thereon as had been contributed by such persons as Conner had persuaded on his representations of personal credit thus to improve the land.   And Conner, of course, would have as his profit, in the event of his failure, such sums of money received from Reed as he had been enabled to retain for his personal use. . . .

"The occupancy, and subsequent title to the land, in Conner, who had invested practically nothing therein, enabled him to procure and maintain a credit he was not entitled to and caused this plaintiff to expend labor and materials of considerable value over a considerable period of time and thus far without recompense. Upon all the foregoing findings I find that the work done by this plaintiff for Conner and the damages it suffered by reason of not getting any portion of its pay from Conner for its work are the natural and obvious result of the situation existent at the time the conveyance of land and transfer of title went into effect January 4, 1909, which situation was created by W. W. Reed and Conner acting in conjunction at the time. . . .

"It seems to the master to be the especial province of equity to fasten the responsibility for harm done upon those who do it. And I therefore find and rule upon all the foregoing findings in this case that the harm done this plaintiff of which it justly complains in its bill was primarily occasioned by the joint acts of the defendants, W. W. Reed and Conner.   I find and rule that W. W. Reed, representing the Lexington Club as his principal, having actively aided and entrusted Conner with the means of deceiving without repudiating him or disclosing the deception is responsible in damages to such innocent person dealing with Conner as may naturally and legally suffer in consequence of the wrongful use of said means by Conner.   I find the plaintiff to be such an innocent person.   Therefore . . . I further find and rule that the plaintiff is entitled to recover said sum of $8,216 with interest from April 5, 1909, together with the costs

of this suit, from the defendants, Harrison W. Conner, William W. Reed and the Trustees of the Lexington Club."

The defendant Reed and the defendant trustees filed the following among other exceptions to the master's report: (1) "in that the master rules that the plaintiff is entitled to relief in this suit, the master having no authority to make any ruling of law whatsoever"; (2) "because said ruling is not warranted by the facts stated in said report." The defendant Conner filed the following among other exceptions: (5) "the defendant Conner objects to the master's report because of the finding that the plaintiff has suffered legal damage."

The exceptions were heard by *Richardson*, J., who made a memorandum stating: "I am unable to see, upon the facts stated by the master, that the trustees of the Lexington Club or said Reed are liable in damages to the plaintiff for the amount stated by the master, either on the alleged ground of conspiracy, or on the ground of false or fraudulent representations, made or authorized to be made by them, deceit or otherwise. The facts stated do not show that there was any such conspiracy between or by Conner and the trustees of the Lexington Club, as to make statements of Conner, not made in their presence or by their authority, evidence against them."

A final decree dismissing the bill accordingly was entered. The plaintiff appealed.

*J. B. Sullivan, Jr.*, (*P. R. Blackmur* with him,) for the plaintiff.

*E. G. McInnes*, (*C. P. Lincoln* with him,) for the defendants.

RUGG, J.    This is a suit in equity by which the plaintiff seeks to hold the several defendants on the ground of a conspiracy to defraud it, for work performed and materials furnished in the construction of apartment houses. The gist of a civil action of this sort is not the conspiracy, but the deceit or fraud causing damage to the plaintiff, the combination being charged merely for the purpose of fixing joint liability on the defendants. *May* v. *Wood*, 172 Mass. 11, and cases cited at page 13.    *Gurney* v. *Tenney*, 197 Mass. 457, 465.

The material facts are these: The defendant Conner conceived the idea of building a block of houses in Brookline, and had negotiations for the purchase of land for this purpose with one Stearns, the owner. Before the terms of this purchase were

concluded Conner, by misrepresentation as to his financial stand-
ing, induced the plaintiff to commence work on the lot, and a
written contract between the plaintiff and the defendant Conner
was signed for concrete piling on December 24, 1908.   It is for
performance of this contract that the plaintiff seeks to hold the
other defendants.   The plaintiff does not allege any communica-
tion between it and the other defendants.   It made no inquiries
of them, and received no information from them, directly or indi-
rectly.   At the time it began work, and when the contract was
signed, Conner did not own the land.   On January 9, 1909,
Conner procured, through deceit, as the master found, as to his
financial resources, in which the defendant W. W. Reed partici-
pated, the conveyance of the land from Stearns to himself and at
the same time executed to Reed and his associates a first mort-
gage.   Conner was without money, and as a stranger he had
sought Reed for the purpose of placing this mortgage, from the
proceeds of which he hoped to be able to build the houses.   The
money on the mortgage was to be advanced in instalments, and
a part of it was to be used toward the purchase price of the land
in a way which, as to Stearns, the master has found was fraudu-
lent.   But he also has found that Conner was not the agent of
Reed, and that although Conner was without experience, skill or
efficiency in this kind of business, and the plan of getting title
and application of advancements on the mortgage were such as
to make it "not only possible but probable at the outset" that
Conner would not be likely to be able to proceed, yet he also
found that Reed maintained the relation of mortgagee, and had
no other active intent about the matter; that the joint action
between Reed and Conner ended with the execution of the
mortgage from Conner to Reed and his associates, and that
Reed did not intend to cause Conner to fail, and did not· have
the equivalent of actual knowledge as to the result of Conner's
operations.

   This does not go quite to the extent of making Reed and his
associates liable for the false representations of Conner, or for a
conspiracy with him to defraud.   It does not show a connection
sufficiently close between Reed and Conner to constitute them
joint adventurers, or to establish the relationship of principal
and agent.   This is not a case where the master has found that

the real design of the defendant mortgagees was to put forward the nominal owner of the land for the purpose of procuring its improvement through the labor and materials of others, either consciously intending or as reasonable men bound to anticipate the result that through the failure of the nominal owner, all that was done would enure to their benefit. He does not find that the elaborate agreement between Conner and Reed for the advancement of the money ostensibly by way of mortgage, although lacking nothing in legal form, was in truth a mere pretense to mask the real purpose of ultimately defrauding all who might add value to the property described in the mortgage. Nor does he find that Reed and his associates used Conner as their tool, either with or without his knowledge and consent, in a scheme which they had made their own to the end that they might defraud. Findings like these would call for the application of different principles of law. But in this case the plan originated with Conner. The contract, by the performance of which the plaintiff has suffered damage, was made before the defendants other than Conner had any connection with the matter. The mortgage was a genuine one. The defendant mortgagees were able and ready to carry out their part of the mortgage contract with Conner and to advance him the money from time to time as required by it. While Conner was wholly incompetent, he regarded himself as the responsible head, and was treated as such by the other defendants. When the relation between the parties is not such as to impose some duty, passive observation of the conduct or readiness to profit by the failure of one for whom no legal responsibility exists as agent, copartner, confederate or otherwise, does not constitute a basis for civil liability as a joint participator. This case is distinguishable in its facts from *Light* v. *Jacobs*, 183 Mass. 206, and *In re Friedman*, 164 Fed. Rep. 131, 134, especially relied upon by the plaintiff.

The master undertook, as a part of his report, to make rulings of law. His only duty was to find the facts, and he was not required to make general rulings of law as to the effect of these findings. *Clark* v. *Seagraves*, 186 Mass. 430, 435. *Adams* v. *Young*, 200 Mass. 588, 590. The facts which he has reported do not warrant the ruling that the defendants are responsible in damages to the plaintiff. The first and second exceptions of the

defendant Reed and of the defendants trustees and the fifth exception of the defendant Conner to the master's report should be sustained.

It does not appear to be necessary to discuss the question whether the finding of the master was warranted, that the deed from Stearns to Conner was procured by the deceit of the latter in which Reed participated.

*Decree dismissing the bill affirmed.*