VICTOR FEINBERG *vs.* HARRIS POORVU.

DAVID LENDER *vs.* SAME.

SAMUEL E. SEWALL *vs.* SAME.

SAMUEL FINE *vs.* SAME.

L. H. STEINBERG & another *vs.* SAME.

BERNARD W. MARCUS *vs.* SAME.

JACOB WEISMAN *vs.* SAME.

THE M. R. FLOORING COMPANY, INC. *vs.* SAME.

THE BUTTRICK LUMBER COMPANY *vs.* SAME.

Suffolk.    December 4, 1923. — May 21, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Agency,* Undisclosed. *Deceit. Fraud. Conspiracy. Evidence,* Statement of coconspirator, Admission by conduct.

In actions by contractors who had furnished labor and materials for the construction of a building on real estate standing in the name of a third party, there were in the declarations counts in contract based upon allegations that the defendant was an undisclosed principal. There was evidence tending to show that, after the title owner had purchased the land, he made an agreement with the defendant providing for a construction loan and at the same time gave him a construction loan mortgage upon the real estate which was duly recorded; that from time to time the owner made payments to the plaintiffs by his own checks and in cash; that after contracts were made with the plaintiffs they talked with the defendant concerning the title owner's resources and ability to pay the plaintiffs, and were told by him that he believed the owner was all right, and that he was advancing him money on construction loan mortgages, that he was " behind " him and believed him honest and trustworthy; that, speaking of the owner, the defendant said, ". . . everything will be all right. I am in it, and you will get paid. . . . I will pay you "; that the defendant knew the owner's financial condition and had been told he had no money with which to construct the building; that he said to the owner, " Through me . . . you will become a good fellow and a good name . . . I will push you along . . . I will tell them [the building people] to give it to you and they will give it to you; " that the money for the purchase of the land came from the defendant; that at one time when payments could not be made by the owner, the defendant told him to give the contractors

notes; that he afterward advised the owner to make a compromise offer to the creditors and that, when such offer was accepted, he said to the owner that the best thing that he could do was to save every cent he could get, " It is only wasting money "; that the defendant's mortgage was foreclosed, that before its foreclosure he already had applied for a loan on the premises, that at the foreclosure sale the property was purchased by an employee of his who gave him a note without consideration, and that he was " foreclosing to wipe out the bills." *Held,* that

(1) A finding was warranted that the real purpose of the defendant was to secure the property for himself, and that, knowing the inability of the owner to carry out his contracts, he used him for his own purpose, intending to secure for his own benefit the material and labor furnished under the contracts with the plaintiffs; that he was in fact the principal and the real party in interest;

(2) The full extent of the defendant's interest was unknown to the plaintiffs, and, although credit was given to the owner, the plaintiffs could recover from the defendant if the jury found that he was the principal.

The third count in the declaration above described was in tort based on fraud of the defendant and set up a conspiracy of the defendant with the owner to procure the plaintiffs' labor and materials without paying therefor. Beside the evidence above described, there was evidence tending to show that the defendant suggested " that a combination be created between . . . [the owner] and the defendant to cheat every creditor on the job " and that the owner declined to be a party to it. *Held,* that

(1) Upon all the evidence a finding for the plaintiffs was warranted;

(2) Evidence was admissible of statements made by the defendant at the time when a contract between the owner and one of the plaintiffs was signed;

(3) It was proper to permit certain witnesses who had performed labor and furnished material in the construction of the building, but who were not parties to the actions, to testify that they had been paid by the defendant.

NINE ACTIONS OF CONTRACT OR TORT by contractors and material men, who had furnished labor and materials for the construction of a building upon real estate standing in the names of Joseph Scotch and Philip Poorvu, to recover the amount of their claims from the defendant as an undisclosed principal of Scotch and Poorvu or as one in a conspiracy to cheat and defraud the plaintiffs. Writ in the first action dated May 24, 1917; in the second action dated September 12, 1917; in the third, fourth, fifth, sixth and seventh actions dated February 8, 1918; and in the eighth and ninth actions dated September 9, 1918.

In the Superior Court, the actions were tried together before *Hammond*, J.   Material evidence is described in the opinion.   The defendant moved for verdicts in his favor. The motions were denied.   The defendant then asked that the following instructions be given to the jury in each action:

" 1. Upon all the evidence the plaintiff cannot recover.

" 2. Upon all the evidence the plaintiff cannot recover in tort.

" 3. Upon all the evidence the plaintiff cannot recover in contract.

" 4. There is no sufficient evidence in the case to warrant the jury in finding that there was a conspiracy entered into between the defendant and Scotch and Poorvu to defraud the plaintiff.

" 5. There is no sufficient evidence in the case to warrant the jury in finding that Scotch and Poorvu acted as agents for the defendant in employing the plaintiff.

" 6. There is no sufficient evidence in the case to warrant the jury in finding that Scotch and Poorvu were acting as agents or on behalf of the defendant in making the contract with the plaintiff relied on by him in this case.

" 7. It appeared that the plaintiff made his agreement with and was employed by Scotch and Poorvu.   The defendant cannot be held on the ground by reason of the statute of frauds.

" 8. The jury is instructed that in this case there has been no novation, and the contract having been made with, and the work done for and at the request of Scotch and Poorvu, and the charges having been made to said Scotch and Poorvu, this defendant cannot be held by reason of the statute of frauds.

" 9. The plaintiff cannot recover upon his amended declaration for the reason that the said amended declaration discloses no cause of action against the defendant."

The requests were refused.   The defendant then moved that the plaintiffs severally be required to elect upon which count or counts they were going to the jury.   The motions were denied.   There were verdicts for the plaintiffs as follows: for Feinberg, $3,007.35; for Sewall, $401.81; for Lender,

$1,479.38; for. Fine, $867.92; for Steinberg and another, $1,968.46; for Marcus, $1,392.95; for Weisman, $270.02; for The R. M. Flooring Co., Inc., $906.78; and for The Buttrick Lumber Co., $1,036.36. The defendant alleged exceptions.

The cases were submitted on briefs.

*W. Flaherty,* for the defendant.

*A. Berenson, B. Berenson & W. B. Keenan,* for the plaintiffs.

CARROLL, J.  These are nine actions to recover for labor and materials furnished by the plaintiffs and used in the construction of two apartment houses in Boston. Joseph Scotch and Philip Poorvu, hereinafter called the owners, were partners as masons and builders, for about four years previous to the autumn of 1916. They purchased two parcels of ·land upon which they proposed to erect two apartment houses.  After the purchase they made an agreement with Harris Poorvu, the defendant, providing for a loan to them by the defendant of a sum of money to be paid in definite amounts, according to the progress of the work; and at the same time executed and delivered to him mortgages of the two parcels of real estate to secure the advances made to them.  The mortgages were duly recorded.

Thereafter the owners contracted with the plaintiffs for labor and material to be used in the construction of the buildings; and, from time to time while the plaintiffs were performing their contract, the owners made payments to them by their own checks and in cash.  There was evidence tending to show that, after the contracts declared on by the plaintiffs were made, they talked with the defendant concerning the resources of the owners and their ability to pay for the labor and material furnished by the plaintiffs, and were told by the defendant that he believed the owners were " all right; " that he was advancing money to them on construction loan mortgages; that he was " behind " them; that he believed them to be honest and trustworthy.  The plaintiff Feinberg testified that when he made the written contract with the owners, the defendant was present and

told him, " These boys, [referring to the owners] everything will be all right. I am in it, and you will get paid. . . . I will pay you." Feinberg further testified that he requested the defendant to sign the contract made by him with the owners and the defendant refused; that he received payments from the owners and on one occasion received payment from the defendant upon the written order of the owners.

The declaration in each case is in three counts: the first on an account annexed, the second alleges that the real owner of the property was the defendant, and that the owners were his undisclosed agents; and the third sets out a conspiracy of the defendant with the owners to defraud the plaintiffs by procuring the plaintiffs to furnish labor and materials without paying therefor, that the owners were financially irresponsible and arranged with the defendant, in order to defraud the plaintiffs, that the defendant's mortgage should be foreclosed and that the defendant " put them forward as the owners of said property for the purpose of fraudulently procuring labor and materials of the plaintiff and others without paying therefor," and that the transaction between the defendant and the owners, by which they became the owners and the defendant became the mortgagee was a mere pretence to defraud the plaintiffs. There were verdicts for the plaintiffs and the actions are in this court upon the defendant's exceptions.

The first question to be considered is this: Was there any evidence for the jury, showing that the defendant was the principal and the owners his agents? It could have been found that the defendant knew of the owners' financial condition. He was told they had no money with which to construct the building. There was evidence that he said to them " Through me . . . you will become a good fellow and a good name. . . . I will push you along. . . . I know people, building people, and I know every one of them. I will tell them to give it to you and they will give it to you "; that the money for the purchase of the land came from the defendant; that at one time, when the contractors stopped work on one of the buildings and the owners informed the defendant that they " didn't get enough money

to finish the building," he told them to give the contractors notes. According to the testimony of one of the owners, the defendant was notified " that it was impossible to do work on seventy-five per cent and pay everybody when they are due;" that he advised the owners to make an offer to their creditors of twenty per cent of their claims, and when this was accepted by the creditors and the owners asked the defendant for the funds to pay them, he said, " The best thing for you boys is to save every cent that you can get. It is only wasting money;" that he applied for a loan on the premises before his own mortgage was foreclosed; that at the foreclosure sale the purchaser in whose name the title was taken was in his employ; that the purchaser gave him a note for $10,000 which was without consideration; that he was " foreclosing to wipe out the bills." A jury could find that the real purpose of the defendant was to secure the property for himself, and that, knowing the inability of the owners to carry out their contracts, he used them for his own purpose, intending to secure for his own benefit the material and labor furnished under the contracts with the plaintiffs; that he was in fact the principal and the real party in interest.

Joseph Scotch and Philip Poorvu, with whom the plaintiffs dealt, were the record owners of the property when the contracts were made. But a jury could find that the plaintiffs did not, at this time, know that the defendant was the person for whom the work was to be done; that the owners were merely his agents; and that the defendant received the benefit of what the plaintiffs did in furnishing labor and materials under their contracts with the owners. The full extent of the defendant's interest was unknown to the plaintiffs and although credit was given to the owners, the plaintiffs could recover against the defendant if he was the principal in the undertaking. See *Light* v. *Jacobs*, 183 Mass. 206, 211; *New England Foundation Co.* v. *Reed*, 209 Mass. 556, 561, 562. The plaintiffs could show by parol evidence that the defendant was the principal and the owners his agents. There was evidence that the defendant was in fact the principal and the case was submitted to the

jury properly on the second or contract count. *Eastern Railroad* v. *Benedict*, 5 Gray, 561. *Lerned* v. *Johns*, 9 Allen, 419.

The third count is in tort and is based on the defendant's fraud. In addition to the facts already referred to, there was evidence that the defendant suggested " that a combination be created between . . . [the owners] and the defendant to cheat every creditor on the job; " that the owners declined to be a party to it. Taking all this evidence in connection with the defendant's statements, "I am in it, and you will get paid . . . I will pay you." " You go ahead. Don't stop the building, because I have a mortgage all placed and just as soon as you complete it, I will pay upon every cent," and from the entire evidence and the inferences to be drawn therefrom, a jury could find that the purpose of the defendant was to secure the property for himself, and knowing the inability of the builders to carry out their contracts, he put them forward as responsible parties, intending to secure for himself the material and labor furnished under the contracts for the plaintiffs. *Light* v. *Jacobs, supra. New England Foundation Co.* v. *Reed, supra.*

The evidence of statements made by the defendant at the time the contract of the owners with one of the plaintiffs was signed, was admissible. The plaintiffs' theory was that the defendant and the owners were engaged in a conspiracy. On this ground the evidence was admissible. *Gurney* v. *Tenney*, 197 Mass. 457. *Attorney General* v. *Pelletier*, 240 Mass. 264, 313.

Certain witnesses who had performed labor and furnished material in the construction of the building, but who were not parties to the actions, were allowed to testify that they had been paid by the defendant. This evidence had some tendency to show the real relations between the defendant and the owners, and there was no error of law in its admission.

The defendant's seventh and eighth requests were not applicable to the theory on which the case proceeded. There was no error in the conduct of the trial.

*Exceptions overruled.*