JAMES P. PHELAN *vs.* THE ATLANTIC NATIONAL BANK OF BOSTON.

Suffolk. February 11, March 29, 1938. — November 28, 1938.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, COX, & RONAN, JJ.

*Attachment. Trustee Process. Jurisdiction*, Effect of invalid attachment. *Conspiracy. Deceit. Fraud. Agency*, What constitutes, Scope of authority. *Pledge. Evidence*, Competency, Extrinsic affecting writing.

A mesne attachment by trustee process in an action in a State court against a national bank as defendant is void under U. S. Rev. Sts. § 5242, but the court's jurisdiction of the action is not affected thereby.

Allegations in a declaration in tort of conspiracy by the defendant with another added nothing to a cause of action for deceit or fraud therein set forth.

Evidence did not show any relation between a bank and a borrower from it that would make it liable for false representations made by the borrower to the owner of securities in obtaining them for use as collateral for the bank's loan.

A letter from an owner of bonds to a bank, stating that he had delivered them to a named person, who was treasurer of a corporation, and understood that "he" would pledge them to the bank "for a note," authorized the bank to receive them as collateral security for a personal loan to the treasurer, despite an understanding between the owner and the treasurer, of which the bank had no knowledge, that the loan should be made to the corporation.

Testimony by the writer of a letter of authority as to his intent, not disclosed in the letter, respecting the nature of the authority was incompetent in an action by him against one who acted in reliance on the letter.

TORT. Writ in the Superior Court dated November 15, 1932.

The case was tried before *Dillon*, J., and was argued at the bar of this court in February, 1938, before *Rugg*, C.J., *Donahue*, *Lummus*, & *Dolan*, JJ., and after the death of *Rugg*, C.J., was submitted on briefs to *Field*, C.J., *Cox* & *Ronan*, JJ.

*E. J. Flynn*, for the plaintiff, submitted a brief.

*Lee M. Friedman*, for the defendant.

*W. H. Gulliver, Jr., & A. Lincoln*, by leave of court submitted a brief as *amici curiae*.

DOLAN, J. This is an action of tort. The case was tried to a jury and comes before us on the plaintiff's exceptions to the action of the judge, at the close of the evidence, in ordering the jury to return a verdict for the defendant, and to the exclusion of certain evidence. The plaintiff's declaration contains two counts. In the first it is alleged that on November 22, 1926, one Murphy was treasurer of Murphy Gorman & Waterhouse Inc., which owed the defendant $100,000; that of this sum $32,500 was overdue; that Murphy had misappropriated $100,000 of the funds of the corporation, which was then insolvent to the knowledge of Murphy and the defendant; that Murphy and the defendant combined and conspired, by false representations and fraudulent concealments, to induce and did induce the plaintiff to deliver a check for $5,000 and bonds of the par value of $30,000 to Murphy, which the latter turned over to the defendant to reduce the indebtedness of the corporation to it for the purpose of enabling the defendant to obtain an unlawful preference over other creditors of the corporation; and that in pursuance of the conspiracy the defendant and Murphy, by means of false representations and fraudulent concealments, hindered and delayed the allowance of the plaintiff's claim against the bankrupt estate of the corporation and caused the plaintiff to undergo great expense.

In the second count it is alleged that the defendant "has converted to its own use a check for five thousand ($5000) and bonds of the par value of thirty thousand dollars ($30,000) with accrued dividends and interest," to the plaintiff's damage.

The action was begun by trustee process and the defendant filed a motion to dismiss for want of jurisdiction, which was denied by the trial judge. Under U. S. Rev. Sts. § 5242 (U. S. C. Title 12, § 91) no attachment may issue in any State court against a national bank until after final

judgment. See *Pacific National Bank* v. *Mixter*, 124 U. S. 721, 726; *Van Reed* v. *People's National Bank of Lebanon*, 198 U. S. 554, 557–559. See also *Freeman Manuf. Co.* v. *National Bank of the Republic*, 160 Mass. 398. The attachment of the goods, effects and credits of the defendant in the hands of a trustee is an attachment within the meaning of this statute. *Posselius* v. *First National Bank-Detroit*, 264 Mich. 687, 690; certiorari denied, 292 U. S. 627. *Safford* v. *First National Bank of Plattsburg*, 61 Vt. 373, 374. The effect, however, of the statute is to nullify an attachment issued before final judgment and the validity of the action itself is not affected. *Pacific National Bank* v. *Mixter*, 124 U. S. 721, 730. *Van Reed* v. *People's National Bank of Lebanon*, 198 U. S. 554. Although the attachment is void, if such service has been made upon the defendant as would be legal if the action had been begun by common writ, the action may be properly maintained. *Belknap* v. *Gibbens*, 13 Met. 471, 475. *Barrows* v. *Rose*, 7 Gray, 282. *Wright* v. *Graustein*, 229 Mass. 68, 71. As ruled by the judge: "The writ by which this action was brought included *both* the command to summon the defendant *and* the command to summon the trustee. It was a proper writ under the state law." The action of the judge in denying the motion to dismiss was correct.

The evidence, in its aspect most favorable to the plaintiff, tends to show the following facts: The plaintiff is a retired shoe manufacturer. Murphy Gorman & Waterhouse Inc., hereinafter referred to as the corporation, was formed in 1919 by three of his former employees. He assisted them in the enterprise by loans on their individual notes, and by gifts of equipment. On November 22, 1926, the corporation owed the defendant $100,000, of which $32,500, represented by three notes, was overdue. The defendant had made demands on Murphy, the treasurer of the corporation, for payment of these notes. Murphy appealed to the plaintiff for financial assistance and showed the latter a statement of condition of the corporation as of August 15, 1926, which indicated that the financial condition of the corporation was sound. Murphy then told the

plaintiff that business was good but that a big failure had made him temporarily short of money, and that a loan, if made by the plaintiff, would be repaid shortly. In fact the financial status of the corporation was not then sound; and Murphy personally was indebted to it in a large amount. Murphy made false representations to the plaintiff as to the condition of the corporation and fraudulently concealed from him the real facts as to its financial status. The plaintiff gave Murphy a check for $5,000, payable to his order, and delivered to him municipal bonds, the par value of which was $30,000 and the actual value $30,529.95. Murphy gave the plaintiff a note of the corporation for $35,000. Two days later Murphy informed the plaintiff that he had advised the defendant that the bonds belonged to the plaintiff, and that the defendant had questioned his (Murphy's) right to pledge them as security and had said, "Well, we want Mr. Phelan to say that," and prepared a letter for him to sign. The plaintiff thereupon signed a letter dated November 22, 1926, which reads in part as follows: "Atlantic National Bank, Boston, Mass. Gentlemen: This is to advise you I have this day delivered to Mr. William H. Murphy, Jr., the following described bonds owned by me which it is understood he is to pledge to the Atlantic National Bank of Boston for a note of $27,500 dated November 22, 1926 payable in 60 days from date, with interest at 5 per cent per annum." On November 27, 1926, the defendant lent Murphy $27,500, evidenced by his note and secured by the bonds which the plaintiff had delivered to him. Upon instructions of Murphy, the defendant applied the proceeds of the plaintiff's check for $5,000 and the $27,500 lent to Murphy in satisfaction of the overdue indebtedness of the corporation to it amounting to $32,500. The bonds were held as collateral security for the loan to Murphy evidenced by his note. When the note became due it was not paid, and finally the bonds except two ($2,000) were either collected at maturity or sold to realize funds to satisfy Murphy's note after notice to the plaintiff. On September 29, 1927, the defendant wrote the plaintiff remitting a check for surplus from collateral, of $905.14,

and advising him that it held $2,000 Southwestern Power & Light bonds as surplus collateral, which it was prepared to deliver to him upon proper receipt. An accounting of the defendant's transactions with Murphy in connection with the loan involved was transmitted to the plaintiff at the same time. The plaintiff declined to accept the check and maintained that the assertion of the defendant that it had in its possession $2,000 in bonds as surplus collateral was incorrect. On December 13, 1926, a petition in bankruptcy was filed against the corporation by three of its creditors, and on January 10, 1927, it was adjudicated bankrupt. The plaintiff proved his claim against the corporation in the bankruptcy proceedings and received a dividend of $13,074.86.

The gist of the plaintiff's cause of action as set forth in the first count of the declaration is not conspiracy, but deceit or fraud on the part of the defendant which caused damage to the plaintiff wrongfully. The averment of a conspiracy does not ordinarily change the nature of the cause of action nor add to its legal force. *Johnson v. East Boston Savings Bank*, 290 Mass. 441, 445. *New England Foundation Co.* v. *Reed*, 209 Mass. 556, 560. As the present action is against the defendant alone, the averment that the defendant conspired with Murphy to injure and defraud the plaintiff serves at best no purpose other than that of an allegation of a relation between Murphy and the defendant which would make his acts binding upon the defendant. See *Commonwealth* v. *MacKenzie*, 211 Mass. 578, 581.

We think that the evidence does not disclose facts entitling the plaintiff to recover on either count of his declaration. As to the first count, which charges fraudulent representations and concealment, the plaintiff admitted that he had no communication with the representatives of the defendant, prior to the transaction complained of between the defendant and Murphy, other than the plaintiff's own letter authorizing Murphy to pledge the bonds for a loan from the defendant. The plaintiff's case, therefore, must rest upon the actions and representations of Murphy. The

evidence does not show that Murphy was an agent of the defendant in his dealings with the plaintiff, nor that the defendant knew the details of those dealings by Murphy with him, nor that it was connected with Murphy in any way which would render it liable to the plaintiff for Murphy's actions and representations in securing the financial assistance from the plaintiff. Compare *New England Foundation Co.* v. *Reed,* 209 Mass. 556, 561. There is no evidence that Murphy had any communication with the defendant relative to seeking the plaintiff's aid before he did so.

The evidence does not disclose any facts which would render the defendant liable to the plaintiff on the second count of his declaration, alleging conversion. The check for $5,000 was made payable by the plaintiff "to the order of" Murphy. The letter of the plaintiff to the defendant clearly authorized the latter to make the loan to Murphy on the security of the bonds delivered to him by the plaintiff. The plaintiff's contention that the authorization was limited to a loan to the corporation and did not extend to a loan to Murphy personally cannot be sustained. The language of the letter of authorization is clear and unambiguous. It contains no such limitation, and the evidence does not disclose that the defendant had any knowledge of such a limitation, if in fact there was an understanding between the plaintiff and Murphy that the loan by the defendant was to be one to the corporation. The defendant is not affected by any understanding of that nature between the plaintiff and Murphy. *DeBoer* v. *Anthony,* 300 Mass. 403, 413–414. *Edgerly* v. *First National Bank of Boston,* 292 Mass. 181, 186, 187. *Ironside* v. *Levi,* 278 Mass. 18, 22, and cases cited.

The plaintiff has contended at length that at the time of the defendant's loan to Murphy the former knew that the corporation was insolvent, and that it adopted the procedure of lending the money to Murphy and applying it, together with the proceeds of the plaintiff's check, to the satisfaction of the overdue indebtedness of the corporation that it might avoid having the payment, if made by the corporation, held in fraud of creditors, if bankruptcy pro-

ceedings were begun against the corporation within four months thereafter. It is sufficient to say that we think the evidence would not warrant the jury in finding that the defendant knew the corporation was in fact insolvent prior to December 13, 1926.

The plaintiff excepted to the exclusion of the following question which was put to him, by his counsel, in connection with his letter of authorization to the defendant: "Did this letter signed by you . . . express your intention as to the bonds?" The rule that a party to a written contract cannot testify as to his intent to assist in its construction (see *Aradalou* v. *New York, New Haven, & Hartford Railroad*, 225 Mass. 235, 240; *Quirk* v. *Smith*, 268 Mass. 536, 543) is not limited in its application to cases of completed contracts but extends to cases of documents written by one party upon which another party relies. See *Richardson* v. *Churchill*, 5 Cush. 425, 427. The question was properly excluded.

The only other exception argued by the plaintiff relates to the exclusion of evidence which could have a bearing only on the question of damages. In view of what we have already said its exclusion becomes immaterial.

*Exceptions overruled.*