Solomon F. Cushman & others *vs.* Frederick E. Snow, trustee.

Hampden.    March 8, 1904. — June 22, 1904.

Present: Knowlton, C. J., Morton, Lathrop, Loring, & Braley, JJ.

*Factor.    Payment.*

In an action by a manufacturer against the assignee for the benefit of the creditors of a factor who had become insolvent, to recover a balance alleged to be due for amounts received by the factor in payment for the plaintiff's goods consigned to him for sale, it appeared, that by the course of dealing between the plaintiff and the factor the factor sold the plaintiff's goods, consigned to him, for cash or on credit to such customers as he pleased without disclosing the name of his principal, and credited the plaintiff with the amount of the purchase money whether it then had been received or not, guaranteeing the sales and receiving a commission for doing so, that when the factor made remittances to the plaintiff from time to time they were credited generally without reference to any particular consignment, that with quarterly statements and adjustments of interest the account ran on continuously from month to month and year to year, and that during the entire period up to the time of the factor's insolvency the factor was indebted largely to the plaintiff on the whole account as would have appeared if a balance of the whole account had been struck at any time. The defendant contended that he was entitled to retain the balance claimed by the plaintiff because it represented a sum which the factor had paid to the plaintiff in excess of the amount which the factor's books showed to be due to the plaintiff at a certain date, and the defendant claimed the right to retain the proceeds of the sales made during a period of about three weeks and a half from that date, on the ground that the payments made by the factor to the plaintiff should be appropriated to the sales made by the factor in the order in which they were made, and that this would leave the balance in question as the property of the factor, so that the plaintiff could claim the amount only as a general creditor of the factor. *Held,* that the payments by the factor should be applied on the open running account in accordance with the course of dealing between the parties, and as the balance on the general account was at all times against the factor the money retained by the defendant belonged to the plaintiff.

Contract against the trustee for the benefit of the creditors of the firm of Sawyer, Manning and Company for money had and received, with a bill of particulars alleging a certain balance to be due to the plaintiffs on account of goods sold by Sawyer, Manning and Company as agents for the plaintiffs. Writ dated September 17, 1898.

In the Superior Court the case was submitted upon an agreed statement of facts to *Gaskill,* J., without a jury. He found for

the plaintiffs and assessed damages in the sum of $7,668.40. The defendant appealed.

The agreed facts were as follows :

The plaintiffs were woollen manufacturers, operating mills at Monson, and for a period of about four years previous to February 19, 1898, consigned the products of their mills for sale on commission to Sawyer, Manning and Company, a firm of commission merchants doing business in Boston and New York.

On February 19, 1898, Sawyer, Manning and Company, being insolvent, made an assignment to the defendant of all their firm and individual assets for the benefit of their creditors.

Sawyer, Manning and Company sold the plaintiffs' goods to such customers as they deemed advisable, guaranteeing payment in every case, for which guarantee they received a commission. It was not the practice of Sawyer, Manning and Company to give the plaintiffs the names of their customers. When Sawyer, Manning and Company sold any goods of the plaintiffs, they credited the plaintiffs on their books with the amount of such sales, whether such sales were made for cash or on credit, although, when made on credit, Sawyer, Manning and Company had not received the proceeds.

During the time Sawyer, Manning and Company were so engaged in selling the plaintiffs' goods, they from time to time made remittances to the plaintiffs on account of goods consigned to them, but all such remittances were made on account, and were so credited by the plaintiffs, without reference to any particular consignment made by the plaintiffs, or any particular sale made by Sawyer, Manning and Company, or payment received by them on account of such sale. Each remittance so made by Sawyer, Manning and Company was charged by them to the general account of the plaintiffs and credited on the general account on the plaintiffs' books. The sales made by Sawyer, Manning and Company bore no relation to the individual shipments made by the plaintiffs, and when such sales were made on credit, the length of such credit differed with different customers. On balances in the hands of Sawyer, Manning and Company, the plaintiffs were allowed interest from the average due date of sales, and Sawyer, Manning and Company charged interest on such balances as from time to time were standing in

their favor; but as a rule, the balances remained against Sawyer, Manning and Company, and the plaintiffs were allowed interest accordingly.

During the entire period from November 30, 1897, to February 19, 1898, the balance on the entire account was uniformly against Sawyer, Manning and Company, and was so on the last named date, when the assignment to the defendant was made.

Monthly sales accounts were rendered by Sawyer, Manning and Company to the plaintiffs, and they also rendered quarterly accounts current in which interest was computed, and charged or credited as the case might be. No adjustments of interest or balances were made, but the sales accounts were carried along from month to month, each quarterly statement starting with the balance shown on the statement preceding.

After the plaintiffs had begun to do business with Sawyer, Manning and Company, they wrote them on July 29, 1895, the following letter:

" Monson, Mass., July 29, 1895. Mess. Sawyer, Manning & Co., Gentlemen: We are in receipt of your memo. of sales, and think perhaps we have heretofore neglected to state that our method of dealing with our commission houses has been to have them render sales accounts at the end of each month, but to let the account stand to our credit, subject to our sight draft, we notifying you at time of making draft, and both sides of the account reckoning interest at six per cent. Account current rendered quarterly (Jan. 1st, etc.). We do not like to have sales cashed, as we do not always have places to use it advantageously. Please let us know if the above will be satisfactory to you. Yours respectfully, S. F. Cushman & Sons."

To this, on July 30, 1895, Sawyer, Manning and Company made the following reply:

" New York, July 30, 1895. Messrs. S. F. Cushman & Sons, Monson, Mass. Gentlemen: Your favor of 29th received, and your manner of doing business is the same as we have been accustomed to, with one exception; that is, we never allow any one to make a draft on us. When you require any money, if you will kindly write to us, we will send it to you by return mail. Yours truly, Sawyer, Manning & Co."

The arrangement indicated in these letters was not thereafter

changed, down to the time of the assignment of Sawyer, Manning and Company to the defendant.

At the time of making the assignment, the amount due the plaintiffs, according to the books of Sawyer, Manning and Company, after deducting all charges and commissions, was $11,559.09, which afterwards was reduced by payments made by the defendant to $5,792.41.

The account after November 30, 1897, was as follows:

| | | | |
|---|---|---|---|
| Net amount due November 30, 1897 . | $29,617.10 | | |
| Add sales subsequent to November 30, 1897 . . . . . . . . . | 17,341.99 | | |
| | | $46,959.09 | |
| Less payments made by Sawyer, Manning and Company subsequent to November 30, 1897 . | 35,409.51 | | |
| | | $11,549.58 | |
| Less payment by defendant . . . . . . . . . . . . . . '. | | 5,432.12 | |
| | | $6,117.46 | |
| Balance of credit and debit for interest and allowances on sales subsequent to December 24, 1897 . . . . . . . . . . . | | 325.05 | |
| | | $5,792.41 | |

After the defendant became trustee under the assignment, he collected on account of sales of the plaintiffs' goods made by Sawyer, Manning and Company a sum of money sufficient to pay the plaintiffs' claim in full. From these collections the defendant paid to the plaintiffs all of their claim except the sum of $5,792.41 due at the date of this action, and held in his hands the sum of $5,792.41, derived from sales made between November 30 and December 24, 1897, inclusive, and collected by him, this being the amount of sales between those dates, and held no other proceeds of such collections.

The amounts collected by the defendant were on account of sales, payments for which, by the terms made by Sawyer, Manning and Company with the customers to whom such sales were made, were not payable until after the last remittance made by Sawyer, Manning and Company to the plaintiffs.

The defendant paid a dividend of forty per cent to all the creditors of Sawyer, Manning and Company, and tendered the plaintiffs the sum of $2,316.96, the dividend to which the plaintiffs were entitled, if not entitled to be paid in full.

*C. K. Cobb,* for the defendant.

*C. L. Gardner, C. G. Gardner & E. S. Gardner,* for the plaintiffs.

BRALEY, J.   If the relation of debtor and creditor existed between the defendant's assignors and the plaintiffs the defendant invokes the aid of the general rule relating to the appropriation of payments where this relation is shown, namely, that when money is paid, if no direction is given by the debtor the creditor may apply it as he chooses, but if no appropriation is made by either the law makes such application as justice between the parties may require. *Parker* v. *Green,* 8 Met. 137, 144. *Crompton* v. *Pratt,* 105 Mass. 255. *Worthley* v. *Emerson,* 116 Mass. 374. *National Mahaiwe Bank* v. *Peck,* 127 Mass. 298. *Swett* v. *Boyce,* 134 Mass. 381.

There was no contract in writing, but the general course of dealing between the plaintiffs and their agents seems to have been that the latter sold the goods consigned either for cash or on credit to such customers as they pleased, whose names were not disclosed to the principals, but when they were sold the plaintiffs were credited with the amount notwithstanding the proceeds of the sales on credit had not been received.

As the sales were made the agents after taking out commissions and other charges remitted the remainder, and also an account of the goods sold to the plaintiffs, and such remittances were credited generally without reference to any particular consignment, or any single sale, and beyond rendering monthly accounts of sales, and quarterly statements in which interest on the account also was adjusted between them, no final balance was struck or adjustment made in the general account, and it ran continuously from month to month and year to year.

It cannot be inferred from the meagre statement of the custom of the firm not to disclose the names of customers to their principals that they thus rendered themselves liable for the purchase price of all goods sold through their agency, for if they undertook to guarantee the sales and solvency of purchasers it should have appeared in the contract. *Swan* v. *Nesmith,* 7 Pick. 220, 223. *Upham* v. *Lefavour,* 11 Met. 174.

But if it is true that the firm can be considered *del credere* factors and became debtors as argued by the defendant, the title

to the property did not pass to them but remained in the plaintiffs, who still retained the right to resort to the original purchasers for payment, and this rests on the ground of the right of the principals to enforce a contract made by an agent even if at the time of sale they were undisclosed to the purchaser, while any defence which the latter could have raised against the agent is open in such a suit. *Kelley* v. *Munson,* 7 Mass. 319, 323. *Barry* v. *Page,* 10 Gray, 398, 399. *Locke* v. *Lewis,* 124 Mass. 1, 7. *Foster* v. *Graham,* 166 Mass. 202. See Pub. Sts. c. 71, § 1.

In such a case moreover the guaranty does not transform the essential character of the relation, for the principal retains title to the goods until sold, and then to their proceeds at least until paid to the agent, and may pursue both agent and purchaser until he has obtained satisfaction of his debt. *Denston* v. *Perkins,* 2 Pick. 86. *Chesterfield Manuf. Co.* v. *Dehon,* 5 Pick. 7. *Merrill* v. *Bank of Norfolk,* 19 Pick. 32, 34. *Vail* v. *Durant,* 7 Allen, 408. *Rhoades* v. *Blackiston,* 106 Mass. 334. *Robinson* v. *Talbot,* 121 Mass. 513. *Titcomb* v. *Seaver,* 4 Greenl. 542, 544. *Thompson* v. *Perkins,* 3 Mason, 232. See *Roosevelt* v. *Doherty,* 129 Mass. 301, 302.

And where the factors become insolvent their agency is thereby terminated, and an assignee, and here the defendant as trustee, stands in their place and takes the estate of his assignors subject to all the equities in favor of third parties that may attach to it, with the further liability that if he collects money from purchasers who dealt with the agents as principals he must account for it to the consignors unless he can show that it is a part of the assets of the insolvent estate. *Audenried* v. *Betteley,* 8 Allen, 302, 308. *Chace* v. *Chapin,* 130 Mass. 128, 131.

For the purposes of this defence the defendant selects November 30, 1897, from a period covering nearly four years, as a date when in the books of account kept by the agents from the entries made by them of transactions with the plaintiffs, it appeared they owed $29,617.10. Subsequently, and before their failure they paid $35,409.51, and if this amount is applied in payment of the account as it stood on that date, the sum of $5,792.41 remains as money apparently advanced on goods sold but not paid for by customers from November 30, 1897, to De-

cember 24, 1897, or a payment to this extent in excess of the actual indebtedness; and when this amount was collected by him he contends that it lawfully can be retained because the plaintiffs were required to apply the overpayment until it was exhausted on the next succeeding consignments of goods, and if they did not the law should now make such an appropriation.

But the entries on their books created no agreement between the parties, and .were in the nature of private writings for the use of themselves; they never were brought to the knowledge of the plaintiffs nor assented to by .them, and cannot modify the terms of the contract. *Swift* v. *Pierce*, 13 Allen, 136, 137.

Moreover, the difficulty in maintaining this position is that the general course of dealing between the parties was continuous, as all the goods were consigned and remittances made under one agreement without any reference to whether payments for sales by the agents had matured, or were still outstanding, and when payments between the parties were received they were not accepted, nor remitted in liquidation of a specific part of the business transactions between them, but in part satisfaction of an open and running account, and during the entire time in which this adjustment of payments and advances is interposed, and up to that of their failure, the factors themselves were largely indebted to the plaintiffs if a balance had been struck of the full account, including the credit of alleged overpayment. *Hill* v. *McLaughlin*, 158 Mass. 307, 309. *Sercombe-Bolte Manuf. Co.* v. *Lovell Arms Co.* 171 Mass. 175, 176. *Gass* v. *Stinson*, 3 Sumn. 98, 112.

It also is clear that such an artificial distinction was not contemplated by the parties, for the consignments of goods and remittances therefor followed in the usual way between the dates selected, and no request was made by the firm for any change in the application of payments. If the factors had brought an action against the plaintiffs to recover the amount as an advance in excess of sales they must have been defeated, for a full statement of the account taken at any time during the period covered would have shown that " the balance on the entire account was uniformly against " them. *Upham* v. *Lefavour*, 11 Met. 174.

Indeed it would seem a novel proposition for a debtor who is

liable to his creditor for a final balance due on a general account, extending through a series of years with an intermingling of charges and payments, to select a date when by his system of bookkeeping he had made payments sufficient to show an indebtedness to him to claim they are to be applied to show a surplus to his credit, where if they are applied as received by his creditor the balance is constantly against him.

So here, to prove a balance in his favor the defendant is obliged to accumulate all the payments made after November 30, and apparently up to the date of his appointment, and apply them to produce this result ; but to do this he ignores the fact that during the whole time, for aught that appears to the contrary, goods were being consigned and sold, the proceeds of which when remitted if appropriated in the usual manner could not be used for such purpose.

No sufficient reason is now shown why the application of these payments should not follow the usual course pursued by the plaintiffs and their agents ; and as the latter never suggested that the money remitted was in excess of the proceeds of sales that had been received, the plaintiffs were at liberty to assume they were receiving funds which by the contract rightfully belonged to them, and when a proper credit was given in the order of their receipt it must be treated as appropriated to a partial discharge of the account, and is conclusive. *Parker* v. *Green,* 8 Met. 137, 144. *Upham* v. *Lefavour, ubi supra.*

*Judgment affirmed.*