## FERNANDINA SHIPBUILDING & DRY DOCK CO. v. PETERS et al.

(District Court, S. D. Florida.   August 17, 1922.)

No. 866.

**1. Courts ⬅=⮞279—Declaration in tort action against citizens of other state to recover more than $3,000 held to give federal court jurisdiction.**

Declaration in action of trespass on the case for fraud and deceit, seeking damages in the sum of $800,000, and alleging the plaintiff to be a citizen of the state of Delaware, and the defendants to be "citizens of the Southern district of Florida," *held* to give the United States District Court jurisdiction, under Judicial Code, § 24 (Comp. St. § 991).

**2. Courts ⬅=⮞281—Action for fraud is a "suit of a civil nature."**

An action of trespass on the case for fraud and deceit is a "suit of a civil nature at common law," within Judicial Code, § 24 (Comp. St. § 991).

[Ed. *Note.*—For other definitions, see Words and Phrases, First and Second Series, Suit of Civil Nature.]

**3. Courts ⬅=⮞280—Whether declaration states cause of action does not affect question of jurisdiction of federal court.**

The question whether the declaration is sufficient to state a cause of action does not affect the question of whether the case is within the jurisdiction of the federal district court.

**4. Courts ⬅=⮞329—Amount in controversy determined by ad damnum clause in action for unliquidated damages.**

In an action for unliquidated damages, the amount stated in the ad damnum clause must be taken as the true measure of the value of the matter in dispute, under Judicial Code, § 24 (Comp. St. § 991), giving the United States District Court jurisdiction in suits of a civil nature at law, where the amount in controversy is more than $3,000.

**5. Principal and agent ⬅=⮞143(2)—Contract inures to benefit of undisclosed principal.**

Where an agent on behalf of his principal enters into a contract as if made for himself, and the existence of the principal is not disclosed, such contract inures to the benefit of the principal, who may appear and hold the other party to the contract made by the agent.

**6. Contracts ⬅=⮞108(2)—Contract requiring certain persons to advance money to corporation, to subscribe for stock, and to perform services for corporation held not illegal.**

A contract requiring certain persons to advance to a corporation certain sums of money to be secured by its note, and a pledge of its stock, to subscribe at par for a certain amount of the corporation's preferred stock, and to perform certain definite services in financing and carrying out a contract between the corporation and a third party, *held* not illegal.

**7. Frauds, statute of ⬅=⮞150(1)—Not considered on demurrer to complaint.**

The statute of frauds, being an affirmative defense, cannot be considered on demurrer to the complaint.

---

⬅=⮞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**8. Fraud ☞9—"Representation" defined.**

A "representation," within the law of frauds, is anything short of a warranty which proceeds from the action or conduct of the party charged, and is sufficient to create on the mind a distinct impression of fact conducive to action.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Representation.]

**9. Action ☞27(1)—Declaration held to state cause of action for fraud, and not for breach of contract.**

A declaration alleging that defendants entered into a contract with the plaintiff to advance money and perform certain services to enable plaintiff to perform a contract with the third party, that plaintiff relied on such contract with defendants for such money and services, but that defendants did not act in good faith, but conducted negotiations with plaintiff merely to mislead plaintiff, and cause plaintiff to obtain no other or different assistance, and thereby to prevent performance of plaintiff's contract with the third party, that defendants combined and confederated together to defraud the plaintiff, and to cause the third party to cancel his contract with the plaintiff, and execute a similar contract with defendants, *held* to state a cause of action for deceit and fraud, and not an action for breach of contract.

**10. Fraud ☞3—Elements of actionable fraud stated.**

A material misrepresentation, made with knowledge of its falsity, or made as a positive assertion recklessly, without knowledge of the truth, with the intention that it should be acted on by the party to whom made, that such party acted in reliance on it, and thereby suffered injury, *held* to constitute actionable fraud.

**11. Fraud ☞12—Statements of opinion or intention may be actionable.**

Statements of opinion or intention may be so grossly erroneous, deceitful, and fraudulent as to repel the conclusion that the representations were mere matters of opinion, especially where made without the intention of fulfilling promises.

**12. Fraud ☞41—Declaration held to state cause of action.**

A declaration alleging that defendants agreed to advance money and perform services to enable plaintiff corporation to perform its shipbuilding contract with a third party, that such agreement was not made in good faith, but merely to induce plaintiff to rely on defendants' assistance, that defendants did not render such assistance, and thereby prevented plaintiff from performing the contract with the third party, that plaintiff spent money in reliance on defendants' promises in preparation for performance of the contract, and that defendants combined and confederated together to defraud plaintiff, and to prevent plaintiff from performing the contract, and induced the third party to cancel the contract with plaintiff, and to award a similar contract to defendants, *held* sufficient to state a cause of action for deceit and fraud.

**13. Pleading ☞64(2)—Declaration stating cause of action for fraud held not duplicitous.**

Declaration alleging that defendants agreed to advance money and perform services to enable plaintiff corporation to perform its shipbuilding contract with third party, that such contract was not made in good faith, but merely to induce plaintiff to rely on defendants' assistance, and to obtain no other or different assistance, that defendants did not render such assistance, and thereby prevented plaintiff from performing the contract with the third party, that plaintiff spent money in reliance on defendants' promises in preparation for performance of the contract, and that defendants combined and confederated together to defraud plaintiff, and to prevent plaintiff from performing the contract, and induced the third party to cancel the contract with plaintiff, and to award similar contract to defendants, *held* not duplicitous.

At Law. Action by the Fernandina Shipbuilding & Dry Dock Company against Thomas J. Peters and others. On demurrer to declaration. Demurrer overruled.

The declaration alleges: That the plaintiff, prior to March 28, 1918, was incorporated under and doing business pursuant to the laws of the state of Delaware, with an authorized capital stock of 10,000 shares, of the par value of $100 each, 2,500 shares preferred, and 7,500 shares common. That it was a citizen of the state of Delaware, United States of America. That defendants were citizens of the Southern district of Florida, United States of America. That on or about the said 28th day of March, 1918, the plaintiff entered into a contract with the republic of France, filed therewith and marked Exhibit A, providing that the plaintiff should construct and sell to the republic of France 12 steel tugs and 12 steel barges, in accordance with the plans and specifications attached to the contract, at a total estimated price of $5,130,-000; that all vessels were agreed to be constructed, classed for registry, tried for performance, and delivered to the republic of France at Fernandina, Fla., in the manner set out in detail in the contract. Such deliveries were to begin within 8 months after the payment of the first installment of the purchase price, and all within 14 months therefrom. Payments for construction and delivery of the vessels were to be as follows: Ten per cent. in five days after receipt of permit from the United States Shipping Board, allowing the prosecution and performance of the agreement, and the balance as work progressed in detail as specified in the contract.

April 9, 1918, the plaintiff procured from the United States Shipping Board the requisite permission, which was filed with the declaration as an exhibit and made a part thereof. May 8, 1918, the republic of France made its first payment to the plaintiff in the sum of $513,000, by voucher No. 28876 of the banking firm of J. P. Morgan & Co. of New York. This voucher was filed as an exhibit to the declaration and made a part thereof. May 9, 1918, the plaintiff furnished to and the same was accepted by the republic of France, in accordance with agreement, a surety performance bond of the Fidelity & Deposit Company of Maryland, paying therefor the sum of $5,130, which was filed as an exhibit to the declaration and made a part thereof.

That upon the signing and delivery of the contract between the plaintiff and the republic of France the payment by the republic of France to the plaintiff of the first payment on said contract of $513,000, and the delivery of the performance bond above mentioned to the republic of France, the contract between the plaintiff and the republic of France became effective, binding, and obligatory on the respective parties. That the plaintiff took the steps and proceedings necessary to carry out and fulfill such contract on its part and behalf. That it employed certain officers and financial agents, secured adequate shipbuilding site and facilities, and arranged for the necessary machinery, tools, and equipment, and all things requisite and necessary in the enterprise, at an outlay of actual cash of $50,000, and liabilities incurred in the sum of $500,000. That in furtherance of said enterprise the plaintiff proceeded to make the necessary financial, executive, and administrative arrangements.

That the defendants entered into negotiations with the plaintiff with a view of supplying the latter with the necessary financial assistance and executive and administrative abilities. That such negotiations were carried on through the plaintiff's officers and agents, A. W. Knowles and others, acting for and in behalf of the plaintiff and in their own behalf and interest. That such negotiations were conducted and continued until on or about the 14th day of June, 1918, when a memorandum of agreement was entered into by three of defendants, Peters, Ward, and Goodman, and witnessed by the other defendant McNair, which agreement was file with the declaration and made a part thereof. That on June 17, 1918, a definite agreement, provided in the provisional agreement above mentioned, was formally and in detail agreed upon with the plaintiff by all the defendants, but was never actually signed. A copy of such agreement so agreed upon and unsigned is filed with the declaration as a part thereof.

That in order to secure the services, financial standing, and business ability of the defendants, the plaintiff agreed to cause, through the interposition of said A. W. Knowles, 6,079½ shares of full-paid, nonassessable stock to be transferred and delivered to the defendants in consideration of the defendants advancing to it or paying into its treasury the sum of $150,000 in cash, upon delivery to them or their nominee by the plaintiff of its 6 per cent. note or notes payable on or before 14 months from date, and in further consideration of the defendants subscribing for and paying into the treasury of the company at least $15,000 of the unissued preferred capital stock. That negotiations, meetings, interviews, and dealings were conducted and carried on by the plaintiff with the defendants in the absolute good faith and belief by the plaintiff that the same would be conducted by the defendants in good faith, and that the defendants would carry out their promises and undertakings in absolute good faith, and were able financially and personally to give to the plaintiff the necessary financial, executive, and business abilities required by it for its successful operations. That in furtherance of said negotiations the plaintiff put the defendants in full possession of all the controlling facts and circumstances relating to the enterprise and the situation and condition of itself in relation thereto.

That as a matter of fact the defendants were not acting in good faith in said negotiations, but conspiring and confederating together, and craftily, secretly, stealthily, and in fraud of the rights of the plaintiff, merely conducting said negotiations for the purpose of obtaining substantially all information, misleading the plaintiff, and inducing it to rely solely upon the defendants, and thereby obtain no other or different assistance, until the time should elapse when the work under said contract with the republic of France should have been commenced and carried on.

The declaration then concludes: "That the defendants so combined and confederated together to defraud the plaintiff in the premises, and underhandedly, secretly, and without the knowledge of the plaintiff undertook to negotiate or obtain a contract with the French Commission and sought to induce the French Commission, representing the republic of France, to grant a contract to the defendants in lieu or in substitution of the contract awarded by the republic of France to the plaintiff, in their own behalf and interest, and in behalf and interest of themselves and their associates, and thus induce the republic of France to cancel its contract with the plaintiff, recover the unused money previously paid by the republic of France as aforesaid, and thus totally ruin and destroy the plaintiff's business prospects, and as a result obtain the full benefit and advantage of the contract for themselves, the said defendants. That by reason of the premises aforesaid, the false and misleading promises and conduct of the defendants as aforesaid, and the reliance thereon by the plaintiff as aforesaid, the time within which to commence operations under said contract was allowed to expire, whereupon the said republic of France did, on, to wit, the 17th day of July, 1918, formally cancel the same, and on the 17th day of July, 1918, received from the plaintiff payment and refund of $514,941.94, which included the amount of the first payment made by the republic of France to the plaintiff, with interest allowed by the bank during the time the funds remained unused, by the check of the plaintiff on the Chase National Bank of New York, which was duly paid to the republic of France on the 24th day of July, 1918, which check, showing the said payment, is filed herewith, marked Exhibit G, and deemed a part hereof, the same and with like force and effect as though fully and at large set forth herein. That by reason of the premises aforesaid, and the combining, conspiring, and confederating of the defendants as aforesaid, and the actual fraud perpetrated upon the plaintiff and committed by the defendants as aforesaid, the said plaintiff has lost and been deprived of all the values acquired and secured by it as aforesaid, and been compelled to relinquish and thereby lose all opportunities which it might and otherwise could have made in and about carrying out the said contract, Exhibit A, and in establishing a successful shipbuilding going concern, and in taking and obtaining other and different contracts at a great profit to it, and has thereby lost and been deprived of all investments, advances, and expenses paid and in-

curred, and all profits which it might have made on said contract, Exhibit A, to the damage of the plaintiff in the sum of $800,000. And therefore the plaintiff claims damages in the sum of $800,000."

To this declaration the defendants demurred, alleging 31 specific grounds, that are considered in the opinion of the court. Demurrer overruled.

Cromwell Gibbons, of Jacksonville, Fla., for plaintiff.

H. S. Anderson, of Jacksonville, Fla., for defendants.

CLAYTON, District Judge (after stating the facts as above). This is an action of trespass on the case. It is sounding in tort. It is not brought for a breach of a contract or for a false warranty. Fraud and deceit constitute the gravamen of the complaint. In the ad damnum clause of the declaration the plaintiff claims damages for $800,000. I have carefully examined the declaration in the light of the objections raised by the demurrer, which contains 31 grounds. It is my opinion that the demurrer cannot be sustained on any one of the grounds.

[1, 2] The first objection raised by the demurrer to the declaration is that the necessary jurisdictional facts are not alleged. This contention is without support. The diversity of citizenship of the parties and that the amount in controversy is over $3,000, both these facts requisite to the jurisdiction of this court, are shown.

[3] It is plain that this action is a suit of a civil nature at law, within the meaning of section 24 of the Judicial Code (Comp. St. § 991). Defendants argue that the declaration does not state a cause of action. However, this does not affect the question of jurisdiction. Barrow S. S. Co. v. Kane, 170 U. S. 100, 18 Sup. Ct. 526, 42 L. Ed. 964; Chicago, etc., R. Co. v. Stephens, 218 Fed. 535, 134 C. C. A. 263; Louisville, etc., R. Co. v. Louisville Trust Co., 174 U. S. 552, 19 Sup. Ct. 817, 43 L. Ed. 1081; Davis v. Mills (C. C.) 99 Fed. 39.

[4] And in further consideration of the objection that the matter in controversy does not exceed $3,000, it is the amount in controversy alleged in the complaint which is controlling, the value of that which the plaintiff seeks to recover, and $800,000 is the amount in the ad damnum part of the declaration for which recovery is sought. Cowell v. C. W. Supply Co., 121 Fed. 53, 57 C. C. A. 393; Baltimore v. Postal Tel. C. Co. (C. C.) 62 Fed. 500; Scott v. Donald, 165 U. S. 58, 17 Sup. Ct. 265, 41 L. Ed. 632. And in an action for unliquidated damages the amount stated in the ad damnum clause must be taken as the true measure of the value of the matter in dispute. Barry v. Edmunds, 116 U. S. 550, 6 Sup. Ct. 501, 29 L. Ed. 729; Yarde v. Baltimore, etc., R. Co. (C. C.) 57 Fed. 913; A. J. Lewis M. Co. v. Klepner, 176 Fed. 343, 100 C. C. A. 285.

[5] Another ground of the demurrer is that it is not sufficiently alleged that Knowles' agency was known to the defendants. An examination shows that the declaration, after alleging the incorporation and capitalization of plaintiff and its contract with the republic of France, goes on to state:

"The defendants herein entered into negotiations with the plaintiff with a view of supplying the necessary financial assistance."

283 F.—40

It is alleged that defendants were to pay into plaintiff's treasury $150,000 and take its notes, and they would subscribe to $15,000 of its preferred stock. It is sufficiently made to appear that all of these negotiations with the defendants were with respect to the contract with the republic of France. The contract here was between the republic of France and the plaintiff, and not between that republic and Knowles, and if, as it sufficiently appears from the declaration, defendants knew about this contract, they must have known that Knowles was acting for plaintiff in his negotiation with them. But, even if the fact that Knowles was acting as agent for plaintiff was not disclosed to the defendants, plaintiff can recover upon the doctrine of undisclosed principal. If the assumption be indulged that the defendants, on the facts alleged in the complaint, could have honestly believed that they were dealing with Knowles as principal, the plaintiff is, I think, entitled to recover. The declaration alleges, and the demurrer admits, that the defendants' negotiations were with plaintiff's officers and agents, Knowles and others, acting for and on behalf of the plaintiff. The plaintiff was to get the money, and defendants were to have plaintiff's stock and notes. Plaintiff was at least an undisclosed principal. It is not necessary that the knowledge of the agency of the principal be brought home to the third person by express notice, but the third person may be charged with notice by reason of attendant facts and circumstances. Great Lakes Towing Co. v. Worthington (D. C.) 147 Fed. 926; Monticello Bank v. Bostwick (C. C.) 71 Fed. 641.

It is an accepted doctrine that where an agent, on behalf of his principal, enters into a contract as if made for himself, and the existence of the principal is not disclosed, such contract inures to the benefit of the principal, who may appear and hold the other party to the contract made by the agent. Buffington v. McNally, 192 Mass. 198, 78 N. E. 309; Cushman v. Snow, 186 Mass. 169, 71 N. E. 529; Lancaster v. Knickerbocker Ice Co., 153 Pa. 427, 26 Atl. 251; Milliken v. West. Union Tel. Co., 110 N. Y. 403, 18 N. E. 251, 1 L. R. A. 281; Kelly, etc., Co. v. Barber Asphalt Pav. Co., 211 N. Y. 68, 105 N. E. 88, L. R. A. 1915C, 256.

[6, 7] The objection raised by the demurrer that the contract is not an enforceable one cannot be considered on demurrer. By the contract between the parties the defendants were to advance to plaintiff certain sums of money, to be secured by its note and a pledge of its stock, to subscribe at par for $15,000 of plaintiff's preferred stock, and to perform certain definite services in financing and carrying out the contract between plaintiff and the republic of France. The contract was partly executed, and all the facts and details of the enterprise were placed in the hands of the defendants by the plaintiff. I fail to see anything illegal about the contract. Possibly the statute of frauds might be invoked; but, even so, that being an affirmative defense, it cannot be considered upon the demurrer to the complaint. It is true that in some of the Code states the statute of limitations may be made available by demurrer, and this may be true also as to the statute of frauds; but as I understand it, such practice is not permissible

in Florida. The contract, which is Exhibit E to the declaration, was definite, and shows the agreement of the parties.

However, if the contract were unenforceable, this action is for damages to plaintiff by reason of conspiracy and fraud of defendants, and if the same can be established the plaintiff would be entitled to recover. As before stated, this action is not on the contract. It is a tort action for defendants' deceit and fraudulent representations. It is alleged that the defendants fraudulently represented that they were dealing with the plaintiff in good faith, with the intention of entering into the agreement. See Exhibit F to the declaration.

[8, 9] A representation, within the meaning of the law of fraud, appears to be anything short of warranty, which proceeds from the action or conduct of the party charged, and which is sufficient to create upon the mind a distinct impression of fact conducive to action. 1 Bigelow, Fraud, 466, 467. And the fact that the contract is set out in extenso as a matter of inducement does not render the action ex contractu. Dixon v. Barclay, 22 Ala. 370. The declaration, although setting out the original contract, and alleging the making of the new contract and its procurement by fraud, should be treated as based on fraud, and not as an action for damages for breach of the original contract. Marriner v. Dennison, 78 Cal. 202, 20 Pac. 386.

The demurrer upon the ground that the defendants are not liable upon the contract is not well taken, because this is an action for deceit, and is not based upon the contract alleged to have been fraudulently procured. Harris, etc., Co. v. Pitcairn, 122 Iowa, 595, 98 N. W. 476; Corder v. O'Neill, 176 Mo. 401, 75 S. W. 764.

[10] It is not necessary to say more in regard to this ground of demurrer, for the declaration shows the representation to have been made to induce the plaintiffs to enter into the contract, and this is stated as one of the fraudulent acts of the defendants, and a part of the conspiracy by which the defendants fraudulently induced plaintiff to let its profitable contract with the republic of France lapse, so that the defendants could make a new contract with the republic and thus secure for themselves the profits of which the plaintiff was deprived. The ground of the demurrer that false representations are not sufficiently alleged is untenable. The declaration does show every essential element of an actionable fraud—that is to say, that the defendants made a material misrepresentation; that it was false; that, when they made it, they knew it to be false, or made it recklessly, without knowledge of the truth as a positive assertion; that they made it with the intention that it should be acted upon by the plaintiff; that plaintiff acted in reliance upon it; and that he thereby suffered injury. 1 Story, Equity, § 187; Arthur v. Griswold, 55 N. Y. 400; Brackett v. Griswold, 112 N. Y. 454, 20 N. E. 376; 1 Bigelow, 467; Leonard v. Springer, 197 Ill. 532, 64 N. E. 299; Brison v. Brison, 75 Cal. 525, 17 Pac. 689, 7 Am. St. Rep. 189; Sweet v. Kimball, 166 Mass. 332, 44 N. E. 248, 55 Am. St. Rep. 406; Hopkins v. O'Neil, 46 Mich. 403, 9 N. W. 448.

The objection made by the demurrer that the declaration does not allege that plaintiff relied upon the defendants' representation and

the fraudulent acts of the defendants, to his damage, is shown to be untenable. It is made to appear that the plaintiff had its valuable contract, the net profit on which would have been at least $1,000,000. It spent $50,000 in cash and other items, and used efforts in getting ready to perform the contract. It needed more cash and certain specialized services. The tugs and barges were to be delivered within an agreed time, and work upon them had to commence by a specific time. It entered in good faith into negotiations with the defendants for money and services, and continued these negotiations up to the moment when the time to commence work expired and the contract was canceled. These and other facts are alleged to show that the plaintiff was misled and deceived by the defendants, and that by reason thereof it lost its contract, its profits, and the money it had invested in the enterprise.

Facts are sufficiently alleged to show that plaintiff was damaged by defendants' acts, the demurrer to the contrary. It is alleged that the plaintiff expended a large sum of money on the preliminary work, and incurred large liabilities in the matter of said contract; that it lost all this solely because it relied on the good faith of the defendants. This case is very similar to Corder v. O'Neill, supra.

[11] In considering the representations made by the defendants, it is well to remember that statements of opinion or intention might be so grossly erroneous, deceitful, and fraudulent as to repel the conclusion that the representations were mere matters of opinion, especially in a case like this, where the allegations are to the effect that the defendants had no intention of fulfilling the promises. Williams v. McFadden, 23 Fla. 143, 1 South. 618, 11 Am. St. Rep. 345; Smith v. Parker, 148 Ind. 147, 45 N. E. 770; Ballard v. Lockwood, 1 Daly (N. Y.) 158.

As to the objection that the damages claimed are speculative or problematical, it is shown that the plaintiff, in connection with the contract, expended certain moneys and incurred certain obligations. It does not seem to matter that these things were done before June 14, for they were all done in connection with the contract, and when the plaintiff, by the defendants' fraud, lost the contract, it necessarily lost the money that it had put in the contract, as well as all profits. The contract was for an agreed number of tugs and barges at an agreed price, and the difference between the contract price and cost can be proven with reasonable definiteness.

[12] I think the declaration states a cause of action. Besides the other necessary allegations contained therein, it alleges:

"That the defendants, so combined and confederated together to defraud the plaintiff, * * * undertook to negotiate or obtain a contract with the French Commission, and sought to induce the French Commission * * * to grant a contract to the defendants in lieu or in substitution of the contract awarded by the republic of France to the plaintiff," etc.

This is positive allegation of the conspiracy and unlawful act in pursuance thereof. It is necessary that the declaration should set forth the substantial facts constituting the fraud, without more. Hop-

kins v. O'Neil, 46 Mich. 403, 9 N. W. 448; Ansley v. Bank of Piedmont, 113 Ala. 467, 21 South. 59, 59 Am. St. Rep. 122.

[13] The objection to the declaration that it is duplicitous is so palpably without foundation as to render comment unnecessary. The subject of duplicity in pleading is exhaustively dealt with in Sloss-Sheffield Steel & Iron Co. v. Smith, 166 Ala. 437, 443, 52 South. 38. Of course, the ancient rule was that the pleading should not be insensible, repugnant, ambiguous, doubtful in meaning, argumentative, in the alternative, or hypothetical, nor by way of recital; but the pleading was required to be positive, and to be stated according to the legal effect. In many respects this rule has been more or less departed from, sometimes with and sometimes without special statutory enactments. So here, I think, under the best modern practice, including the good practice in Florida, the declaration cannot be said to be amenable to the charge of duplicity. I believe any intelligent layman could read the declaration and understand the plaintiff's cause of complaint. Lawyers and courts can, equally as well as such layman, comprehend the meaning of plain English.

Order will be entered overruling the demurrer.