Alonzo B. See *vs.* Israel Nesson & others.

Same *vs.* Israel Nesson.

Suffolk.    March 14, 1924. — May 23, 1924.

Present: Rugg, C.J., Braley, DeCourcy, Crosby, & Carroll, JJ.

*Actionable Tort.   Deceit.   Conspiracy.   Agency,* Undisclosed.   *Contract.*

A manufacturer of elevators, to recover for labor and materials furnished in the installation and repair of elevators in an apartment house, brought two actions.    The first action was in tort against one who, just before the plaintiff had agreed to do the work and furnish the materials, had conveyed the property to a firm of real estate brokers, also defendants, the plaintiff alleging that the defendants conspired to defraud him.    The second action was in contract against the original owner, alleged to be the undisclosed principal in the transactions.    At the trial there was evidence tending to show that the transfer from the original owner to the brokers was for a merely nominal payment in cash and a very large second mortgage; of a declaration by the original owner after the transfer of title tending to show that he still regarded himself as the real owner; of a taking possession by him of the premises as mortgagee under the mortgage by the brokers within six months

after the agreement with the plaintiff, followed by a sale in foreclosure where he was a purchaser; of a statement by him to the brokers that his reason for taking possession was to protect them from the claims of persons to whom they were indebted for labor and materials in caring for and improving the property; that he permitted the plaintiff to go on with the installation of the elevator without notice to him that the work was being done without his consent, and that he requested the plaintiff to perform further work. *Held*, that

(1) Findings were warranted that the defendants in the action of tort combined to cheat and defraud the plaintiff by obtaining from him for their own benefit materials and labor for which they did not intend to pay, and that the plaintiff was entitled to go to the jury in that action;

(2) A finding was warranted that the actual relation between the real estate brokers and the original owner, in so far as the plaintiff was concerned, was not that of mortgagors and mortgagee but was that of agents and principal; and that the plaintiff, upon discovering that fact, was entitled to bring the action of contract against the original owner as an undisclosed principal.

At the trial of the action of contract above described, there was evidence tending to show that, upon the defendant repudiating the contract, the plaintiff did not fully complete his performance of it. *Held*, that the failure of the plaintiff to complete the performance of the contract in such circumstances was not a defence to the action for the value of benefits already conferred upon the defendant.

At the trial of the action of contract above described, where it appeared that the judge instructed the jury that, if the relation between the real estate brokers and the defendant was only that of mortgagors and mortgagee, the plaintiff could not recover, it was not reversible error to refuse further to instruct the jury that, if they found that the original owner conveyed the real estate to the real estate brokers, taking from them a mortgage to secure the purchase price, whether in whole or in part, the owner had no right to restrict the real estate brokers in the improvement of the property except only when such improvement endangered his security by waste.

An item in an account annexed to the declaration in an action of contract read, " installation of elevator " at a certain number on a street. The judge at the trial stated to the jury that he understood this item to be simply a bill for repairing the elevator, and the defendant did not except to the instruction. There was evidence that repairs were made on the elevator and of their value. The defendant requested a ruling that a verdict be directed in his favor on that item because there was " no evidence whatever as to the value of these goods." *Held*, that in the circumstances it was proper to refuse to grant the request.

CONTRACT OR TORT to recover the value of labor and materials furnished in the construction and repair of elevators at buildings numbered 884 and 888 on Massachusetts Avenue in Cambridge. Writ dated October 14, 1916. Also, an action of

CONTRACT to recover for the same items upon an account annexed against one of the defendants named in the first action. Writ dated November 13, 1916.

The pleadings are described in the opinion. In the Superior Court, the actions were tried together before *Fox*, J. Material evidence, requests for instructions, and exceptions by both parties are described in the opinion. In the first action, a verdict was returned for the defendant by order of the trial judge. In the second action, the jury found for the plaintiff in the sum of $2,872.85. Both parties alleged exceptions, which, by agreement of the parties, were presented to this court in one bill.

*J. H. Blanchard,* for the defendant Nesson.

*A. Berenson & B. Berenson,* for the plaintiff, submitted a brief.

BRALEY, J. The first action, in contract or tort, is against Israel Nesson, Arthur T. Paddock and Charles A. Dooley. The first count of the declaration is on an account annexed for labor and materials furnished in the construction and repair of elevators located at number 884 and number 888 Massachusetts Avenue, Cambridge. The second and third counts in tort allege that, in combination with Paddock and Dooley, the defendant Nesson entered into a conspiracy to cheat and defraud the plaintiff by selling or pretending to sell the property in question to Paddock and Dooley, taking from them mortgages for substantially the entire purchase price, with the intent and purpose, on the part of Nesson and of all the defendants, that Paddock and Dooley should procure on their own credit the plaintiff's labor and materials, and thereby cause the value of the real estate to be enhanced for Nesson's benefit, who thereafter should foreclose the mortgage and take possession of the property, leaving Paddock and Dooley without any visible or attachable assets to satisfy the plaintiff's claim. The plaintiff having failed to offer evidence under the first count of a contract with all the defendants, he could not recover on that count, and only the counts in tort need be considered.

The second action is in contract against Nesson as an undisclosed principal.

The cases were tried together. It was in substance undisputed that one elevator had been installed at number 888 by the plaintiff under a contract in writing ostensibly made with Paddock and Dooley, real estate brokers doing business as the Universal Realty Trust, who the jury could find were irresponsible when the contract was made. Both parties took numerous exceptions to the admission and exclusion of evidence. But the plaintiff's exceptions to such rulings, not having been argued, must be treated as waived; and, after a full examination of the defendants' exceptions in so far as argued, we discover no reversible error.

The principal question is, whether in either or both actions, the plaintiff can recover against Nesson, to whom we shall refer as the defendant. The jury on irreconcilable testimony would have been warranted in finding the following material facts: The plaintiff had submitted to the defendant, the owner of the property, an estimate with specifications for furnishing two push button elevators at a total cost of $5,589. The defendant decided not to accept the proposal, but entered into arrangements with Paddock and Dooley to consider the question, who negotiated with the plaintiff for the installation of the elevators. The plaintiff accordingly on or about March 1, 1916, submitted to the Universal Realty Trust at the request of Paddock a proposal, with specifications, to furnish and erect a push button elevator " at # 888 " for $2,425. The acceptance of the proposal was signed by Paddock and Dooley on April 1, 1916. The defendant, who called for the contract and read it, at first showed satisfaction, but when he understood that the elevator might be removed if the payments of $200 a month as stipulated were not made, he said, " How are you fellows going to pay for this elevator? " The defendant, however, on or before March 31, 1916, had conveyed the property to Paddock and Dooley for $135,700, receiving only $500 in cash, the balance of the purchase price being represented by two first mortgages to savings banks amounting to $75,000, and two second mortgages given by Paddock and Dooley to the defendant amounting to $60,200. The interest which Paddock and Dooley had in the transaction was purely spec-

ulative. They desired to obta'n the largest possible return from the rents. But, while they received therefrom $1,200 to $1,500 a month, the expenditures exceeded the total income. While on the face of the conveyance the relation between the defendant and Paddock and Dooley was that of mortgagor and mortgagee, the defendant under his own signature on July 18, 1918, admitted, that he and his wife were and had been the sole owners for the last fifteen years prior to July, 1918, and it could be found that he had made various repairs in the building within the last two years, both periods including the time during which Paddock and Dooley were the apparent owners of record. The credibility of witnesses was solely for the jury. It appears from the evidence of one Murphy, that the defendant on July 15, 1918, admitted that he had installed the elevator, and " had had it there for two years." After they received the conveyance from the defendant, Paddock and Dooley contracted with other mechanics to furnish labor and supply materials required for various repairs on the premises, and the repairs were made with the defendant's knowledge and consent. He also paid for a cable contracted for by Paddock and Dooley in connection with the premises, and he was present in the building while the work was in progress, and in one instance was heard directing the janitor as to the performance of his duties. On August 1, 1916, the defendant took peaceable possession for foreclosure, and foreclosed by sale, he being the purchaser, on December 28, 1916. The defendant told the mortgagors that his reason for taking possession was to protect them from the claims of persons to whom they were indebted for labor and materials in caring for and improving the property. And after taking possession, the defendant permitted the plaintiff to go on with the installation of the elevator without notice to him that the work was being done without his consent, but requested the plaintiff to perform further work, and promised to pay a proper amount for the elevator. A more detailed review would be simply cumulative. It is plain on these findings the jury could further determine, that in the manner and form described the defendants Paddock, Dooley and Nesson combined to cheat and defraud the

plaintiff by obtaining from him for their own benefit materials and labor for which they did not intend to pay. The plaintiff therefore was entitled to go to the jury on the second and third counts in the first action. *Gurney* v. *Tenney,* 197 Mass. 457. *New England Foundation Co.* v. *Reed,* 209 Mass. 556, 561. *Butler* v. *Martin,* 247 Mass. 169, and cases cited. *Feinberg* v. *Poorvu, ante,* 88.

The jury furthermore could find that the actual relations between the defendant and Paddock and Dooley, in so far as the plaintiff is concerned, was not the relation of mortgagor and mortgagee, but the relation of principal and agent. It is settled that, upon discovering that Paddock and Dooley in making the contract were not acting for themselves, but were the agents of Nesson, the plaintiff could sue the defendant as an undisclosed principal. *Eastern Railroad* v. *Benedict,* 5 Gray, 561, 562. *Jacobson* v. *Perman,* 238 Mass. 445. *Seretto* v. *Schell,* 247 Mass. 173. *Feinberg* v. *Poorvu, supra.* The motion that a verdict be directed for the defendant in the second action was denied rightly.

The defendant in the second action submitted the following requests:

" 5. In order to recover in contract, the plaintiff must satisfy the jury there was a complete performance of the contract.

" 6. If the jury are satisfied that in the performance of the contract the plaintiff installed some material part of the mechanism of the elevator which was defective, either in material or workmanship, to such a degree that it rendered the efficiency and enjoyment of the elevator impossible, the verdict must be for the defendant.

" 7. If the jury are satisfied, that the plaintiff, after notice, failed to replace a part of the machinery, defective in material or workmanship, and Paddock and Dooley acted as agents for the defendant Nesson, the plaintiff cannot recover."

" 9. If the jury find that the defendant Nesson conveyed the estate 884 and 888 Massachusetts Avenue, Cambridge, to Paddock and Dooley, taking from them mortgage to secure the purchase price, whether in whole or in part, the defendant Nesson had no right to restrict Paddock and Dooley in the

improvement of the property except only where such improvement endangered his security by waste.

The fifth, sixth and seventh requests, in so far as pertinent, were sufficiently covered by the instructions to which no exceptions were taken. The jury could find, that the reason why the plaintiff did not fully complete the work by the attachment of a new magnet to replace an imperfect magnet originally installed, as requested by the defendant, was the direct denial of the defendant, that he had made a contract with the plaintiff. The defendant also said, that he did not owe him anything, but would pay for the work as a repair job, to which the reply was made, that it was not " a repair job," " it was a contract job." · If the jury found, that he refused performance before the work was fully completed, ·the refusal had the same effect as a breach. *Ballou* v. *Billings,* 136 Mass. 307, 309. To permit the defendant thereafter to retain without payment the benefits actually received, would be to permit him to profit by his own violation of the contract which the plaintiff in good faith had endeavored to perform. *Hayward* v. *Leonard,* 7 Pick. 181. *Atkins* v. *Barnstable,* 97 Mass. 428. *Blood* v. *Wilson,* 141 Mass. 25. *DeMontague* v. *Bacharach,* 187 Mass. 128, 139.

The ninth request was also sufficiently covered by the judge's instructions, that if the relation between Paddock and Dooley and the defendant was only the relation of mortgagors and mortgagee, the plaintiff could not recover; no amplification was necessary.

The record does not show that a new elevator was installed at number 884, but repairs were made on the old elevator. The defendant requested the court to direct a verdict on the second item in the account annexed in the second action, for $289, because there was " no evidence whatever as to the value of those goods." But, while the item was for " installation of elevator No. 884," the judge stated to the jury, that he understood this item to be simply a bill for repairing the elevator, to which the defendant did not except. It was therefore for the jury to determine whether any repairs were made, and on that question there was evidence for their consideration, that the elevator at number 884 for want of repairs

was not in proper condition on April 3, 1916, and that one of the plaintiff's employees worked on it in May, 1916.

The result is that in the first case the entry must be exceptions sustained; and in the second case exceptions overruled.

*So ordered.*