BOSTON MEDICAL SUPPLY CO. v. LEA
& FEBIGER.

No. 4608.

United States Court of Appeals
First Circuit.

April 4, 1952.

Allan R. Rosenberg, Boston, Mass., for appellant.

Warren F. Farr, Boston, Mass. (Ropes, Gray, Best, Coolidge & Rugg, Boston, Mass., and Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., on the brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

Boston Medical Supply Company, appellant herein, a Massachusetts corporation engaged in Boston in the business of selling medical and dental books and supplies at retail, filed a complaint in the District Court for the District of Massachusetts, seeking an injunction and treble damages under § 4 of the Clayton Act, 15 U.S.C.A. § 15. Named as defendants were appellee Lea & Febiger, a Pennsylvania partnership which publishes medical and dental books in Philadelphia, and five others: Brown and Connolly, Inc., and E. F. Mahady & Co., Massachusetts corporations which sell medical and dental books and supplies in Boston at wholesale and also at retail; Viola H. Broadbent, a resident of Massachusetts who retails medical and dental books and supplies at Tufts Medical School both on her own account and as selling agent of Brown and Connolly, Inc.; and The Williams and Wilkins Co., a Maryland corporation, and W. B. Saunders Co., a Pennsylvania corporation, each, like appellee, engaged in publishing medical and dental books.

The complaint alleges the following facts:

Appellant is in competition with the defendants Brown and Connolly, Inc., E. F. Mahady & Co., and Viola H. Broadbent, in selling at retail medical and dental books and supplies.

Defendants E. F. Mahady & Co. and Brown and Connolly, Inc., together control the wholesale supply and distribution in the Boston area of a majority of the medical and dental books and textbooks published in this country, and are the exclusive wholesalers in this area for several publishers, including the defendant publishers.

A large part of appellant's business consists in selling medical and dental books and supplies to students and professors in medical schools in the Boston area. Success in this trade depends upon having a complete supply of the books currently used in the schools, for sales of books represent a large part of total sales, and students, as a matter of convenience, customarily purchase all the books and other supplies which will be needed during a semester from a retailer who carries a complete line.

Late in 1949 appellant moved its business from less desirable quarters to a location close to Tufts Medical School and Pratt Diagnostic Hospital, thereby improving its competitive position with respect to defendants Brown and Connolly, Inc., E. F. Mahady & Co., and Viola H. Broadbent, in retail sales. Those three defendants, in order to meet this sharpened competition, conspired together and with the defendant publishers to restrain and monopolize interstate trade and competition in medical and dental books and medical supplies in the Boston area by boycotting appellant and refusing to supply books to it.

Service of the summons and the complaint upon appellee was made by serving, as agent for appellee, the defendant Brown and Connolly, Inc., through its president, William J. Brown. Appellee moved to quash the service and to dismiss the complaint for want of jurisdiction and for improper venue. After a hearing upon affidavits and answers to written interrogatories this motion was granted by the district court. Thereupon, in accordance with Rule 54(b), F.R.C.P., 28 U.S.C., and "upon the express determination that there is no just reason for delay and that judgment should be entered," a "Final Judgment as to Defendant Lea & Febiger", dismissing the complaint, was entered. From this

judgment the present appeal is prosecuted.

At the outset, although appellee has not urged the point upon us, we note a possible question as to our jurisdiction to hear the appeal. With certain exceptions not here pertinent, our sole power to review the district courts is that granted by 28 U.S.C. § 1291 to hear "appeals from all final decisions * * *." Where, as here, several defendants are charged with concerted wrongdoing, there is a considerable body of authority predating the 1948 amendment to Rule 54(b), F.R.C.P. indicating that, so long as the suit remained pending as to any of the defendants jointly charged, an order dismissing some of them was not appealable as a "final decision", whether the dismissal was on jurisdictional or venue grounds or on the merits. Hohorst v. Hamburg-American Packet Co., 1893, 148 U.S. 262, 13 S.Ct. 590, 37 L.Ed. 443; Hunter v. Federal Life Ins. Co., 8 Cir., 1939, 103 F.2d 192; Street & Smith Publications, Inc. v. Spikes, 5 Cir., 1939, 107 F.2d 755; Porter v. American Distilling Co., Inc., 2 Cir., 1946, 157 F.2d 1012; Studer v. Moore, 2 Cir., 1946, 153 F.2d 902; Kuhn v. Canteen Food Service, Inc., 7 Cir., 1945, 150 F.2d 55; Hunteman v. New Orleans Public Service, Inc., 5 Cir., 1941, 119 F.2d 465, certiorari denied 1941, 314 U.S. 647, 62 S.Ct. 89, 86 L.Ed. 519; Atwater v. North American Coal Corp., 2 Cir., 1940, 111 F.2d 125; Fields v. Mutual Ben. Life Ins. Co., 4 Cir., 1938, 93 F.2d 559. See also Reeves v. Beardall, 1942, 316 U.S. 283, 286, 62 S.Ct. 1085, 86 L.Ed. 1478.

■ We are of the opinion, however, that these cases are no longer controlling. Rule 54(b), as amended in 1948, reads as follows:

"Judgment Upon Multiple Claims. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims."

It is our view that when a district judge finally disposes of one of several claims in suit and certifies that he has done so as contemplated by the rule, his judgment or order on that claim becomes a "final decision" within the meaning of § 1291 of the Judicial Code and is immediately appealable. The district court having disposed of the claim against appellee in this fashion, the appeal is properly before us. Extended discussion of the point would be superfluous, since we are in full agreement with the opinion by Judge Maris, speaking for the Court of Appeals of the Third Circuit, in Bendix Aviation Corp. v. Glass, 195 F.2d 267.

We turn now to the merits.

■ While a criminal prosecution to punish a conspiracy to restrain interstate commerce may be brought, as against all the conspirators, in any district where overt acts in furtherance of the conspiracy have been committed, see United States v. Socony-Vacuum Oil Co., Inc., 1940, 310 U.S. 150, 250 et seq., 60 S.Ct. 811, 84 L.Ed. 1129, the Congress has seen fit to impose more restrictive venue requirements as applied to suits by private parties to redress injuries resulting from such conspiracies.

Section 4 of the Clayton Act reads as follows, 38 Stat. 731, 15 U.S.C.A. § 15:

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

Appellant asserts that venue as to appellee is properly laid in the district of Massachusetts under this section, in that Brown and Connolly, Inc., and E. F. Mahady & Co., both of which are clearly present in Massachusetts for venue purposes, are "agents" of appellee within the meaning of § 4.

The affidavits and answers to interrogatories upon which the issue was tried show that neither of the Massachusetts corporations is affiliated with appellee. Each independently operates its own business, pays its own expenses, solicits its own customers, and conducts its affairs without direction, control, or interference by appellee, selling at wholesale and retail books published by numerous other publishers in addition to those published by appellee. However, both E. F. Mahady & Co. and Brown and Connolly, Inc., take books from appellee on consignment under contracts which it is asserted provide a basis for saying that these Massachusetts distributors are the publisher's "agents" for venue purposes. These contracts provide that appellee is to deliver books on consignment to the distributors, which are designated as "sales agents"; that appellee is to retain title to the books so consigned until they are sold and is to have title to the proceeds of all sales thereafter; that appellee's books are to be sold by the sales agents in quantities and at prices, discounts and commissions fixed by appellee; that the sales agents are to make monthly reports as to stock on hand, amount of cash sales made, and sales on credit which became due during the preceding month; that the sales agents are to make monthly remittances of money due; that the sales agents are to guarantee collection of all sales made on credit; and that, in case of termination of the contracts, the sales agents are to redeliver all stock remaining unsold and to account for all sales. Each of these contracts is terminable on thirty days' notice by either party. The sales agents are required to furnish $5000 indemnity bonds.

Whether these independent Massachusetts corporations became agents of appellee within the meaning of § 4 by entering into such consignment contracts is a troublesome question. Certainly an agency

was created under the Massachusetts substantive law: If one of the booksellers should sell books on credit, and the customer should default, appellee might ignore his right to insist on payment from the bookseller under the del credere clause and enforce the contract against the purchaser. See Cushman v. Snow, 1904, 186 Mass. 169, 173–74, 71 N.E. 529; Capitol Amusement Co. v. Gallagher, 1929, 268 Mass. 321, 167 N.E. 674. Similarly, if the bookseller should contract to sell some of appellee's books, appellee, whether disclosed to the buyer as the principal or not, would, we suppose, be liable for performance of the contract. Cf. See v. Nesson, 1924, 249 Mass. 306, 144 N.E. 238; Feinberg v. Poorvu, 1924, 249 Mass. 88, 143 N.E. 824; Delano v. Goldstein, 1932, 281 Mass. 188, 183 N.E. 146. And stock in the hands of the booksellers, remaining the property of appellee, would not be subject to attachment by creditors of the consignees. Audenried v. Betteley, 1864, 8 Allen, Mass., 302; Walker v. Butterick, 1870, 105 Mass. 237. A relationship having these characteristics is normally described as an agency.

It also seems clear that booksellers are appellee's agents under the substantive sections of the antitrust laws. The question of what constitutes an agent in this respect has arisen in connection with resale price maintenance devices. Sales contracts stipulating the price at which the buyer must resell violate the Sherman Act. Dr. Miles Medical Co. v. John D. Park & Sons Co., 1911, 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502; Bauer & Cie v. O'Donnell, 1913, 229 U.S. 1, 33 S.Ct. 616, 57 L.Ed. 1041. Yet it has been held that it is permissible for a manufacturer to make a retailer his del credere agent, sending goods to the agent on consignment to be sold at fixed prices. United States v. General Electric Co., 1926, 272 U.S. 476, 47 S.Ct. 192, 71 L.Ed. 362. Although the agency so established must be "genuine" to avoid the rule against resale price maintenance, see Standard Fashion Co. v. Magrane-Houston Co., 1922, 258 U.S. 346, 42 S.Ct. 360, 66 L.Ed. 653; Dr. Miles Medical Co. v. John D. Park & Sons Co., supra, the agency contract in this case would probably pass muster under the rule of the General Electric case.

However, a determination that Brown and Connolly, Inc., and E. F. Mahady & Co. are agents of appellee for these purposes does not dispose of the present problem of venue. Certainly § 4 does not subject a person to suit in any district where he has an agent no matter how limited the purpose of the agency. The meaning of the word "agent" for venue purposes should be determined with the desiderata of sound venue requirements in mind. No one would suggest, for instance, that an individual became subject to an antitrust action in Nevada merely because he had employed an attorney in that state to contest his wife's suit for divorce. Cf. Lumiere v. Mae Edna Wilder, Inc., 1923, 261 U.S. 174, 43 S.Ct. 312, 67 L.Ed. 596. And the very limited scope of a consignee's responsibility to his consignor would lead us to pause before holding that a typical consignment arrangement such as we have here renders the consignee an agent of the consignor for venue purposes. Cf. Bank of America v. Whitney Central National Bank, 1923, 261 U.S. 171, 43 S.Ct. 311, 67 L.Ed. 594.

 We withhold decision of this venue question, however, for it seems to us that the judgment of dismissal as to appellee was clearly correct on the other ground taken by the court below, that the service of process upon William J. Brown, as president of Brown and Connolly, Inc., did not subject appellee to the jurisdiction of the district court in Massachusetts. Rule 4(d)(3), F.R.C.P., to which appellant asserts that the service conformed, provides that service upon a partnership shall be "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant."

There is no contention that either William J. Brown or Brown and Connolly, Inc., is an officer of appellee or was authorized by appointment or by law to receive service of process. Thus appellee was subjected to the jurisdiction of the district court only if Brown and Connolly, Inc., due to its consignment contract, may be deemed to be "a managing or general agent" of appellee.

Whether or not this Massachusetts corporation might be considered an agent of appellee for the purpose of laying venue under § 4, we perceive no warrant whatsoever for calling it either a managing or a general agent of the publishing company. Such titles import a far larger responsibility for the affairs of the principal than that which was conferred by appellee upon Brown and Connolly, Inc., in the contract of consignment. See Diamond v. New York, S. & W. R. R. Co., D.C.E.D.N.Y. 1937, 18 F.Supp. 605; United States v. Nidera Uruguaya, S. A., D.C.S.D.N.Y. 1948, 8 F.R.D. 462. E. F. Mahady & Co., the other Massachusetts sales agent, held an authority equally as broad, or, more pointedly, equally as narrow—both Massachusetts booksellers, as we have seen, had authority only to sell on specified terms the books consigned to them. It would be anomalous indeed if two or more independent business establishments doing business in the same area each became, within the meaning of Rule 4(d)(3), "a managing or general agent" of another separate company simply by accepting for sale consignments of stock.

The judgment of the District Court is affirmed.